Barbara Bailey ETTA, Appellant,

v.

SEABOARD ENTERPRISES,
INC., Appellee.

No. 79–2469.

United States Court of Appeals,
District of Columbia Circuit.

Argued April 4, 1981.

Decided Jan. 8, 1982.

Joseph R. Cooney with whom L. Marie Guillory and Myles Glasgow, Washington, D. C., were on the brief for appellant.

Rex K. Nelson, Washington, D. C., for appellee.

Before ROBINSON, Chief Judge, WRIGHT, Circuit Judge, and VAN PELT,* Senior District Judge for the District of Nebraska.

VAN PELT, Senior District Judge:

This is an action originally filed in July, 1976 for violation of the Truth-in-Lending Act, 15 U.S.C. § 1601 *et seq.*, Federal Reserve Regulation Z, 12 C.F.R. § 226 *et seq.*, and the District of Columbia Consumer Credit Protection Act, 28 D.C.Code § 3801 *et seq.* The relief requested was damages (compensatory, punitive and statutory), attorneys fees, costs and rescission of three contracts entered into between certain of the parties. The defendants, other than Seaboard Enterprises, Inc., who sold real property to plaintiff, are Aladdin Associates, Inc., whose corporate address was the same as Seaboard's and who had some of the same persons as officers and to whom Seaboard assigned one of plaintiff's notes without informing her, Edgar M. Levy, who was vice president of both companies, Sophie Levy d/b/a Magic Carpet Company, and Manoochehr Raanan, a director of Seaboard, who allegedly lives at the address given for both companies. The defendants Levy are husband and wife.

Although the facts will be given in greater detail herein, this action arises as a result of Mrs. Etta's purchase of a house in January of 1976 which was owned by Seaboard, and the additional purchase of carpeting and home repairs for the house from Magic Carpet Company. Mrs. Etta moved into the house on March 27, 1976. Soon afterward, she contacted Mr. Levy expressing dissatisfaction. He offered to return the greater part of her money and take the property back if her feelings of having paid too much for the property continued for two weeks. On June 18, 1976, Mr. Levy wrote Mrs. Etta a letter restating the offer he had earlier made. The letter read:

I told you ... that if after a couple more weeks you still felt unhappy with your deal, I would arrange for the repurchase back from you of the premises so that you would have no loss of money. Also however that I could not guarantee to you the full cost of your settlement, though the greater part of it; nor could I guarantee to you the full cost of the carpet installed, though again the greater part of it.

Since I have heard nothing further from you in almost two months, I would assume that you are now more satisfied ....

However, if you still are unhappy over your purchase, I am extending my offer to you until the end of this month only ....

On approximately July 1, Mrs. Etta retained counsel, who had her sign notices of rescission of all the contracts. Mr. Levy turned the notices over to his attorney. Nothing more happened until Mrs. Etta's complaint was filed on July 12, 1976.

Mr. Levy's attorney (not his counsel on appeal) failed to file answers for any of the defendants. Default judgments were entered against all the defendants on November 16, 1976. Seaboard [1] filed a motion to set aside the default on December 16, 1976,

---

* Sitting by designation pursuant to 28 U.S.C. § 294(d).

1. The references to Seaboard in the filing of motions include all defendants since the relationships are intertwined and one attorney represents them all.

which was one day before the case was set for hearing on damages. On December 17, the district court denied the motion to set aside the default. Seaboard noticed an appeal to this court, being Docket No. 77–1123. The appeal was dismissed by order filed April 14, 1977 because Seaboard failed to abide by pertinent Federal Rules of Appellate Procedure; a petition for rehearing was denied on May 26, 1977.

In the meantime, Seaboard began foreclosure proceedings in January of 1977, before any ruling on their appeal from default judgment. The district court entered an order restraining Seaboard from proceeding with foreclosure.[2]

In June of 1977, Seaboard filed a Motion for Reconsideration of its Motion to Vacate the Default. It was denied; Seaboard again appealed to this court. In Docket No. 77–2037 this court summarily affirmed the district court's order denying reconsideration, stating "This case should finally come to an end." Petitions for rehearing and for rehearing en banc were denied May 9, 1978.

Instead of coming to an end, this default judgment case is once again before this court some three years later. Plaintiff now appeals an order of the district court for the District of Columbia affirming all but one of the findings of a U. S. Magistrate to whom the issue of damages had been assigned. The Magistrate and Judge denied plaintiff virtually all relief requested.

Before taking up plaintiff's assignment of errors, it may be helpful to review a few additional background facts and plaintiff's complaint, which contained eight counts. The first count concerns the sales contract entered into on January 14, 1976 by Mrs. Etta and her mother, Cornelia Ewing Bailey, for the purchase from Seaboard of a residence for $39,950.00 on which Mrs. Etta made a deposit of $500.00. Mrs. Etta, a graduate of Howard University and holder of a master's degree, was a supervisory

---

**2.** There have been three attempts to foreclose on this property. The first time an order was entered by the district court on January 26, 1977 enjoining Seaboard from foreclosing on the property pending "the hearing and determination of defendants' appeal to the Court of Appeals for the District of Columbia ...." The order provided that plaintiff continue making payments to Montgomery Federal Savings & Loan Association, Seaboard and Aladdin. As detailed in the text, the appeal was dismissed. On the second appeal to this court, which affirmed the district court's order denying reconsideration, this court further ordered the district court "to terminate forthwith the part of its order of January 27, 1977, requiring appellee to continue making payments ...." Plaintiff ceased making payments on April 1, 1978 and on July 14, 1978 Edgar Levy instituted a second foreclosure suit against the plaintiff. Plaintiff made a motion to hold him in contempt. Although the motion was set twice for hearing, it was never heard and never ruled on. On December 7, 1979 the district court's order on damages was filed and on December 10, 1979 plaintiff filed a notice of appeal. On December 24, 1979 plaintiff received a *third* foreclosure notice indicating that unless she paid over $46,-000 by January 2 the trustees would proceed to foreclose on the house. Of this amount, $12,-000 was for attorneys' fees, and in addition the $1,200 awarded by the district court in attorneys' fees to plaintiff was tacked onto the notes plus various court costs. On January 4, 1980 this court entered an order enjoining any and all foreclosure proceedings until further order of the court and remanding the record to the district court for consideration of the merits of plaintiff's motion to enjoin foreclosure pending appeal. The matter was again referred by the judge handling the case to the magistrate who recommended that plaintiff should continue to make payments equal in amount to the payments due on the second trust to an account titled jointly between counsel for defendant and plaintiff. The magistrate made no mention of an injunction. The district court found that "although the appeal does not present significant legal issues" the order requiring plaintiff to pay the money into escrow was adequate to protect the defendant's interests. We view this case a great deal differently than the magistrate and district court. Despite the fact we ordered the district court to terminate its 1977 order requiring the appellee to continue making payments, it has once again ordered the appellee (appellant herein) to make payments, this time to an escrow account. We fail to see how the language of our earlier order could have been much more explicit. Admittedly, there is a memorandum in the record indicating that plaintiff agreed to the arrangement. However, it was filed after the magistrate's recommendation, and plaintiff undoubtedly felt she had little choice other than to make the payments as opposed to having the house foreclosed. This court also disagrees with the district court's assessment that there are no significant legal issues herein, since we are reversing and remanding on all issues raised.

employee of the D. C. Department of Human Resources at the time she signed the contract with an annual wage of about $23,000. Her mother, Cornelia Bailey, a former school teacher, was retired from the Treasury Department.

The sales contract provided for an additional cash payment of $5,500 "or $6,000 in total incl. deposit" at the date the property was conveyed. It also provided for the purchaser to assume a first deed of trust in the amount of "aproximately" [sic] $7,000 at 7% interest with payments of $135 a month. The balance was to be secured by a second deed of trust to be paid in monthly installments of $165 with interest at 11½%.

The settlement was closed on February 12, 1976. Mrs. Etta made a cash payment to Seaboard on the residence of $6,603.71[3] and assumed a first trust, held by Montgomery Federal Savings and Loan Association of $6,788.21 at 7% interest payable $130.00 a month. Seaboard, through defendant Edgar M. Levy, its vice president and general manager, arranged the remainder of the financing. Seaboard took a second deed of trust from Mrs. Etta, securing two notes, one for $13,924.23 and the other for $13,237.54.[4] The second note was assigned to defendant Aladdin. Plaintiff alleged in Count I that she was not informed of her right to rescind the contract, that there was no clear disclosure of the cost of financing, and that there was a failure to disclose the "annual percentage rate" all as required by the Truth-in-Lending Act and Regulation Z.

Count II of the complaint concerns the contract for carpeting entered into on January 20, 1976 by Mrs. Etta and her husband, Ayansa, with Mrs. Sophie Levy d/b/a Magic Carpet Company. The contract recited a total cash price of $2,051.00. Mrs. Etta made a deposit of $551.00, and asked for an arrangement to pay the balance. The contract contained a provision whereby the Ettas could pay the balance in monthly installments. A note was to be executed payable in 24 consecutive monthly payments of $70 each beginning March 4, 1976 which included interest at 11.13%. Mrs. Levy obtained the annual interest percentage rate from National Savings and Trust Co. and inserted that rate in the contract. The contract provided:

It is expressly agreed between the parties hereto that neither the acceptance of said note, nor the negotiation thereof, shall be deemed to be a waiver of any of the lien rights of the CONTRACTOR or his assignee.

In Count II of the complaint, plaintiff alleged seven violations of the Truth-in-Lending Act and Regulation Z with regard to this contract.

On January 20, 1976, Mrs. Etta and her husband also entered into another contract with Magic Carpet Company, signed by Sophie Levy, for specified repairs on the residence being purchased under the January 14th contract on which Count I is based. This was for $1,050 to be paid in "cash upon completion." In Count III involving this contract, plaintiff alleged three violations of the Truth-in-Lending Regulations and Regulation Z.

Although not pled in the complaint, it should be noted at this point that on January 25, 1976 Mrs. Etta applied for a loan of $3,058.20 from National Savings & Trust Company. Mrs. Etta claims she was referred to this company by Mrs. Levy. Mrs. Etta and her husband signed for this loan, and $2,600 of this amount was assigned to Mrs. Levy to pay for the carpeting and the repairs. After Mrs. Etta made two payments to National Savings & Trust Company she quit making payments and the loan has been in default.

---

3. There is no explanation why the amount exceeded the $5,500 which the sales contract called for on closing.

4. Although paragraph 27 of plaintiff's complaint indicates that the two notes were equal in amount, an examination of copies of the notes themselves, which are in the record, shows that this is not true. However, despite the difference in amounts, the monthly payments on each note were identical, to-wit, $82.50.

Count IV sought rescission of all of Mrs. Etta's contracts with defendants, claiming she was incompetent to contract and that knowing this the Levys exercised undue influence.

Count V claimed the contracts were unconscionable under 28 D.C.Code § 3812 *et seq.*, and that under § 3812 and § 3813(d)(1) plaintiff was entitled to 10% of the transaction total amount. Count VI alleged that the contracts with Sophie Levy constituted a home solicitation sale, that plaintiff was never informed of her right to cancel and requested rescission under 28 D.C.Code § 3813.

Counts VII and VIII sought punitive damages under the D. C. Consumer Credit Protection Act. Count VII claimed that Seaboard failed to tell Mrs. Etta that one of the purchase money notes Mrs. Etta executed was assigned to Aladdin, who occupied the same business address as Seaboard. Count VIII alleged that Aladdin threatened foreclosure and attempted to mislead, deceive and defraud Mrs. Etta by accusing her of nonpayment of an insurance premium she had actually paid. The total amount sought in these two counts was $70,000 punitive damages and $100,000 compensatory damages.

A default judgment having been entered and reconsideration denied by both the lower court and this court, as is above set forth, the matter came on for a hearing on plaintiff's claim for damages, rescission, attorneys fees and costs. The judge to whom the case was assigned in turn assigned these matters to a magistrate on February 9, 1979. The magistrate held evidentiary hearings on February 27 and 28, and May 11, 1979.

The magistrate's Report and Recommendation was made November 5, 1979. As to Count I, the magistrate found that although there were four instruments involved in the real estate transaction,[5] the only finance charge which was shown was a $50 fee charged for the assumption of the first deed of trust. Since the statutory penalty is double the net finance charge up to $1,000, the magistrate awarded $100 to plaintiff. The magistrate recommended denying rescission because (1) Regulation Z, 12 C.F.R. § 226.9 did not allow rescission where there was the creation, retention, or assumption of a first lien and (2) the court did not have the power to grant rescission where all of the parties to the real estate contract were not before the court. With regard to Counts II and III, the magistrate found that there was a conflict between the complaint and the evidence adduced at the hearings, and that the contract for the carpeting and the contract for house repairs were not credit transactions because plaintiff and her husband obtained credit from a bank and turned over the proceeds to Sophie Levy so that in fact there was no credit extended by Magic Carpet. With regard to Count IV, which sought rescission of the three contracts on the grounds of unconscionability, the magistrate indicated that Edgar Levy had offered to repurchase the house from plaintiff on June 18, and Sophie Levy had offered the plaintiff a full refund of all monies as well as rescission of the contracts, that plaintiff was not entitled to both retain the property and rescind the transactions and that plaintiff had at no time offered to return any of the property. Additionally, the magistrate found that the court could not grant rescission where none of the joint parties to the contracts were parties to the litigation. With regard to Counts V through VIII, the magistrate found that Counts V and VI were not well-pled because they were not credit sales and that rescission was not available. The magistrate further found that Count VII asked for relief under the D.C.Code which excluded loans secured on real estate, and that under Count VIII the evidence did not warrant punitive damages. The magistrate recommended denying actual damages as not having been properly pled, and awarded costs of $805.61. With regard to attorneys' fees, plaintiff's counsel submitted an itemization of their time spent and billing rates

---

**5.** The first mortgage to Montgomery Federal, the sales contract and the two deeds of trust constitute the four instruments mentioned above.

varying between $70 and $100 an hour, with a grand total requested of over $30,000. The magistrate recommended that counsel from University Legal Services, which provides free legal services to underprivileged persons, be awarded twice the amount the pleadings attained for their client, $500 for the work done in the court of appeals, and that a privately retained attorney be awarded the $500 retainer fee he charged. The district court adopted all of the recommendations with the exception of the award of $100 on Count I, which he changed to the statutory maximum of $1,000 because the magistrate had not taken interest into account.

The errors assigned in this court are:

1) Whether the district court erred in denying rescission of the two notes secured by a second deed of trust on the real estate;

2) Whether the district court erred in denying adequate compensatory damages and abused its discretion in failing to award punitive damages;

3) Whether the district court erred in refusing to grant relief on the claims against Sophie Levy d/b/a Magic Carpet Company; and

4) Whether the award of attorneys' fees was arbitrary, capricious and an abuse of discretion.

■ With regard to the first assigned error, the magistrate accepted Etta's claim that appellees had violated the Federal Truth-in-Lending Act with respect to the contract for the purchase of the house. The magistrate concluded that under the applicable regulations the remedy of rescission was not available and relied upon 12 C.F.R. § 226.9(g)(1), which states an exception to the general rule allowing rescission in the case of:

The creation, retention, or assumption of a first lien or equivalent security interest to finance the acquisition of a dwelling in which the customer resides or expects to reside.

In this case, as we have above stated, the two notes assigned by Etta payable to Sea-board totaling more than $27,000, were secured by a second deed of trust on the property. This second deed of trust did not constitute a first lien nor did it constitute an "equivalent security interest." Thus, the regulation did not apply to the fact situation in this case and did not preclude the right of rescission.

■ The magistrate further stated that rescission was unavailable where the title to the property involved is jointly held and all parties do not demand rescission. It is clear that the house was jointly titled to Etta and her mother and her mother had not demanded rescission. However, the regulations governing the Truth-in-Lending Act explicitly provide:

(f) Joint ownership. For the purpose of this section, "customer" shall include two or more customers whose joint ownership is involved, and the following shall apply:

(1) The right of rescission of the transaction may be exercised by any one of them, in which case the effect of rescission in accordance with paragraph (d) of this section applies to all of them....

12 C.F.R. § 226.9(f). The magistrate was in error in failing to give effect to this section. Mrs. Etta under this regulation did have the right to exercise rescission by herself.

■ The magistrate also suggested that Etta did not first tender the property, for redelivery, to the seller and hence was not entitled to rescission. Under 15 U.S.C. § 1635(b), entitled "Return of money or property following rescission," it provides in relevant part:

Within ten days after receipt of a notice of rescission, the creditor shall return to the obligor any money or property given as earnest money, downpayment, or otherwise, and shall take any action necessary or appropriate to reflect the termination of any security interest created under the transaction. If the creditor has delivered any property to the obligor, the obligor may retain possession of it. Upon the performance of the creditor's obligations under this section, the obligor

shall tender the property to the creditor, except that if return of the property in kind would be impracticable or inequitable, the obligor shall tender its reasonable value. . . .

While Edgar Levy offered to buy back the house prior to receiving the notice of rescission he never in fact returned the money he had received. In fact, neither Mr. nor Mrs. Levy returned any money to Mrs. Etta within 10 days after receiving the notice of rescission. Thus, there was no obligation on Mrs. Etta to tender return of the property. Here, again, the magistrate was in error and the error carried over into the trial judge's order. We conclude that rescission was available on the real estate contract and should have been granted. We also note, in an effort to ward off any future assignments of error or appeals, that there is nothing inconsistent about allowing both statutory damages and rescission. *Sellers v. Wollman*, 510 F.2d 119 (5th Cir. 1975); *Eby v. Reb Realty, Inc.*, 495 F.2d 646 (9th Cir. 1974); *Mitchell v. Security Investment Corporation*, 464 F.Supp. 650 (S.D.Fla. 1979). However, a court may condition the granting of rescission upon plaintiff's repayment of the principal amount of the loan to the creditor. *Powers v. Sims & Levin*, 542 F.2d 1216 (4th Cir. 1976). *See also Rudisell v. Fifth Third Bank*, 622 F.2d 243 (6th Cir. 1980). Plaintiff's counsel in a memorandum to the lower court filed December 27, 1979, which is filing 65 in the record on appeal, stated:

> [I]f the notices of rescission given by the plaintiff in July of 1976 are enforced, the interest is irrelevant, if the plaintiff chooses to pay off the face value of the notes. If plaintiff succeeds on her appeal, that will be the case.

It appears that the plaintiff is willing to pay the principal amount of the notes, and we believe in this default case it would only be equitable for her to do so. On remand, the district court should determine, if the parties cannot agree, what amount of the principal is due and owing to appellees. The amount in the joint escrow should be first applied toward the principal balance with the remainder being paid by plaintiff as a condition of rescission.

With regard to the second issue on appeal, it is claimed that the district court erred in not awarding compensatory and punitive damages. The magistrate recommended against awarding compensatory damages on the ground that Etta had not generally sought such damages but rather sought them only under two counts where such relief, in the magistrate's opinion, was improperly pleaded. We believe again the magistrate was wrong. In item 9 of the prayer for relief, found in paragraph 65 of the complaint, Etta sought a general award of compensatory damages. The question is whether she proved any damages at the hearing. Since this case must be remanded on other grounds, we believe the district court should make a determination in the first instance of whether Etta was injured as a result of the failure of appellees to comply with either the Truth-in-Lending Act or the District of Columbia Consumer Credit Protection Act. We further conclude that on remand the issue of punitive damages should be reexamined. Notwithstanding the fact that the complaint alleged that the defendants willfully failed to reveal material information and conducted themselves in a fraudulent manner in connection with the collection of insurance premiums allegedly owed, the magistrate simply stated that "the plaintiff has proffered no evidence, direct or circumstantial, that would support an award of punitive damages." Particularly with a lack of further explanation, we are unable to discern the path of reasoning to the conclusion that the demand for punitive damages was completely devoid of merit. We express no opinion as to whether such damages should be awarded. We think, however, that the claim therefor deserves careful consideration.

With regard to the third issue on appeal, involving the two contracts with Sophie Levy d/b/a Magic Carpet Company, the magistrate found that this claim was not well pleaded and held that the carpet sale was a cash rather than a credit transac-

tion and thus outside the scope of either Act. We cannot approve the magistrate's reasoning which was adopted by the trial judge. The contract for the sale of the carpeting set forth a cash price of $2,051, $551 of which was paid as a deposit and $1,500 to be payable upon delivery of the carpet. The contract further provided that the buyer could defer the payment of the $1,500, making it in 24 monthly installments with interest charges of 11.13%. 15 U.S.C. Sections 1602(e) and (g) provide:

(e) The term "credit" means the right granted by a creditor to a debtor to defer payment of debt or to incur debt and defer its payment.

\* \* \* \* \* \*

(g) The term "credit sale" refers to any sale with respect to which credit is extended or arranged by the seller.

The contract entered into at the time granted the right to defer payment. In fact, there must have been some credit charge because the total of the carpeting and home repairs contracts was $3,101. Mrs. Etta paid $551 down on the carpet, and later assigned $2,600 of a bank loan to Mrs. Levy. That totals $3,151, which was $50 over the cash price of the two contracts. With regard to the contract for home repairs, the magistrate found that this was a cash transaction. Appellant admits in her brief that she was not entitled to relief under the Truth-in-Lending Act,[6] but contends that the magistrate should have awarded relief under the District of Columbia Consumer Credit Protection Act which covers home solicitation sales for either cash or credit. See D.C.Code § 28–3811. On remand, the

district court should make a finding on whether or not a home solicitation sale occurred, and if so, grant any appropriate relief.

With regard to the final issue on appeal, Etta contends the district court erred in awarding attorneys' fees. It is clear that the magistrate awarded nominal attorneys' fees because she felt the case had only nominal merit. While we do not believe counsel's affidavit has in any manner justified an award of over $30,000, neither do we believe that the $1,200 awarded was sufficient. Since this case must be remanded for a thorough reconsideration of damages, we believe the award of attorneys' fees must likewise be reexamined in light of this court's opinion in *Copeland v. Marshall III*, 641 F.2d 880 (D.C.Cir.1980).[7] The district court may order a hearing on such fees if necessary.

In sum, we reverse and remand on every issue raised. On remand, the district judge shall grant rescission of the real estate contract but such rescission is conditioned upon the payment of the principal due on the notes, without any sums sought for interest, court costs, or attorneys' fees. The judge shall reexamine the evidence with regard to compensatory damages and punitive damages. The court shall further consider whether any relief is in order relating to the contracts for carpeting and home repairs, since we find that the trial court erred in considering the carpet sale a cash transaction, and also erred in determining that the D.C.Code did not apply to cash sales. Finally, the district court on remand must reexamine what constitutes a reasonable attorneys fee due plaintiff's counsel,

**6.** We express no opinion as to whether this transaction fell under the Truth-in-Lending Act. We do note, however, that the magistrate specifically found that plaintiff had established that the "extension of credit by the bank was arranged for by Mrs. Levy...." As quoted above, a credit sale is any sale where credit is arranged by the seller.

**7.** This court, sitting en banc in *Copeland v. Marshall III, supra*, has well discussed the elements to be considered in allowing fees in an action under Title VII of the Civil Rights Act of 1964. It stated:

Myriad cases involving court-awarded fees continue to come before the district court judges and ultimately, before this court. We therefore take this opportunity *en banc* to elaborate, to a greater extent than we have in the past, on the approximate mechanism for calculating an attorney's fee pursuant to statutes like Title VII.

*Id.* at 891. We believe the *Copeland* decision may be of assistance in determining the award to be granted in this case.

who have been engaged in a long struggle to protect plaintiff's rights and prevent foreclosure. We do not believe that plaintiff is entitled to a further hearing on damages. Her case must stand or fall on the evidence now in the record as to damages. The appeal here was not from evidentiary rulings, but from the magistrate's erroneous reading of the law which carried over into the district court's order.

The total damages to which Mrs. Etta is entitled may be deductible in their entirety from the payment due on the notes.