**FEDERAL DEPOSIT INSURANCE CORPORATION, in its separate corporate capacity as Liquidator of the Hamilton National Bank of Chattanooga, Chattanooga, Tennessee**

v.

**Gaylord S. WEBB.**

**No. CIV–1–78–22.**

United States District Court, E. D. Tennessee, S. D.

Dec. 21, 1978.

---

James R. Buckner, Miller & Martin, Chattanooga, Tenn., for plaintiff.

L. Caesar Stair, III, Bernstein, Dougherty & Susano, Knoxville, Tenn., for defendant.

## MEMORANDUM

FRANK W. WILSON, Chief Judge.

This is an action on three promissory notes. Jurisdiction is invoked pursuant to 12 U.S.C. § 1819 and is not in dispute. The plaintiff is the Federal Deposit Insurance Corporation (FDIC) suing in its corporate capacity as liquidator of Hamilton National Bank (HNB). The case is presently before the Court on the plaintiff's motion for summary judgment and defendant's motion to amend the Final Pre-Trial Order.

The following facts are undisputed. The defendant, a former employee of HNB, signed several notes payable to HNB. Those notes on their face are as follows: (1) a note executed on November 8, 1975 for a principal amount of Two Thousand Five Hundred and no/100 ($2,500.00) Dollars, with interest at the rate of 4½ per cent per annum to maturity and 10 per cent per annum thereafter until paid; (2) a note executed on December 3, 1975 for the principal amount of Twelve Thousand and no/100 ($12,000.00) Dollars, with interest at 4½ per cent per annum to maturity and 10 per cent per annum thereafter until paid; and (3) a note executed on October 26, 1975 for the principal amount of Five Thousand Five Hundred Forty-One and no/100 ($5,541.00) Dollars, with interest at 9½ per cent per annum to maturity and 10 per cent per annum thereafter until paid [Court File # 10 ¶ (a)]. Each of the above notes was due 90 days after execution and each note was secured by 600 shares of Hamilton Bancshares, Incorporated (The parent corporation of HNB).

In February of 1976 Hamilton National Bank became insolvent and the FDIC was appointed as receiver. Later, pursuant to court order (In the Matter of the Liquidation of HNB, E.D.Tn., So. Division, CIV–1–76–32), the FDIC as corporate liquidator purchased from itself as receiver the remaining assets of HNB. These assets included the notes executed by the defendant.

The plaintiff's claim is based upon the notes executed by Mr. Webb to Hamilton National Bank. The FDIC contends that a balance is owed on the November 28, 1975 note in the sum of $2,499.76, a balance is owed on the December 3, 1975 note in the sum of $11,998.16, and a balance is owed on the October 26, 1975 note in the sum of $5,540.31. The plaintiff seeks recovery of the principal due on each note, plus interest to the date of judgment, attorney's fees as provided for in the notes, and costs.

The defendant admits signing the notes. He contends, however, that by his understanding with HNB each note was renewable for a ten-year period at 4½ per cent interest. Further, the defendant contends that he executed each note in blank. HNB was to later add the terms for time and interest in accordance with an agreement existing between it and the defendant. The defendant contends that the October 26, 1975 note was not executed in a manner authorized by the agreement. Further, the defendant contends that HNB, by its actions, violated the Truth in Lending Act (15 U.S.C. §§ 1601 et seq.).

In addition, defendant contends that HNB director Roundtree Youmans fraudulently induced the defendant to borrow money from HNB in order to purchase the stock of Hamilton Bancshares, Incorporated (HBI). Defendant contends that when Youmans induced him to purchase the stock Youmans knew or should have known that HNB was being operated in an unsafe manner and that the stock of HBI was worthless. Defendant also contends that the FDIC is proceeding against the directors of HNB for fraud and mismanagement and the FDIC should therefore be estopped from denying the fraud alleged in the present case.

Finally, defendant seeks to amend the Final Pre-Trial Order to allege, first, that HNB impaired the collateral (HBI stocks) which secured the notes and thereby discharged defendant's debt. Second, the defendant seeks to allege a failure of consideration.

■ The notes in this case evidence both a promise to pay and a security agreement. Tennessee's Uniform Commercial Code requires that a note in order to be negotiable:

(a) be signed by the maker or drawer; and

(b) contain an unconditional promise or order to pay a sum certain in money and no other promise, order, obligation or power given by the maker or drawer except as authorized by this chapter; and

(c) be payable on demand or at a definite time; and

(d) be payable to order or to bearer.

, Code Annotated Tennessee § 47–3–104(1). Negotiability is not destroyed by: (1) a recitation of the security given, T.C.A. § 47–3–105(e) and Comment 4, (2) a statement that upon default the holder may realize against the collateral, T.C.A. § 47–3–112(b), (3) a promise or power to maintain or protect collateral or give additional collateral, T.C.A. § 47–3–112(c), (4) a term authorizing confession of judgment if the debt is not paid when due, T.C.A. § 47–3–112(d); nor is negotiability destroyed by an acceleration clause, T.C.A. § 47–3–109(c) and Comment 4. Payment under the notes in this case is not conditioned upon any occurrence other than those permitted by the Code itself. Therefore it is this Court's opinion that the notes are negotiable.

■ However, since the FDIC as corporate liquidator of HNB purchased HNB's assets in a bulk transaction pursuant to court order, the FDIC cannot be a holder in due course. According to T.C.A. § 47–3–302(1)(3):

A holder does not become a holder in due course of an instrument:

(a) by purchase of it at a judicial sale or by taking it under legal process; or

. . .

(c) by purchasing it as part of a bulk transaction not in regular course of business of the transferor.

While the FDIC is not a holder in due course, it does retain a favored status in the law. *FDIC v. Vogel,* 437 F.Supp. 660 (E.D. Wis.1977). Under 12 U.S.C. § 1823, the F.D.I.C. acting in its corporate capacity is not bound by any prior oral agreement that would tend to diminish or defeat the corporation's interest in any asset purchased by it from a closed bank. Any prior agreement by the bank in order to be valid against the corporation

(1) shall be in writing, (2) shall have been executed by the bank and the person or persons claiming an adverse interest thereunder, including the obligor, contemporaneously with the acquisition of the asset by the bank, (3) shall have been approved by the board of directors of the bank or its loan committee, which approval shall be reflected in the minutes of said board or committee, and (4) shall have been, continuously, from the time of its execution, an official record of the bank. 12 U.S.C. § 1823.

■ The defendant has not provided sufficient written evidence of the alleged understanding with the bank that his loans could be extended over a ten-year period. The defendant offers written evidence of

HNB policy concerning employee stock purchase loans (Affidavit of Gaylord S. Webb, Court File # 12 ¶ 8–9). The policy statement, however, is insufficient as measured by 12 U.S.C. § 1823. The statement does not provide the specific terms of Mr. Webb's loan nor was it executed by the bank and Mr. Webb at the time of the loan.

■ In addition, the defendant provides no documentary evidence to support his allegation that HNB breached its agreement concerning the terms of defendant's October 26, 1975 note executed in blank or that HNB exceeded authorization when it completed the note. In his deposition, the defendant admits that there is no written evidence of this agreement (Deposition of Gaylord S. Webb, p. 56, lines 14–17). Since the FDIC is not bound by prior oral agreements, breach of those agreements will not affect the corporation's right to recover the amount appearing on the face of the note.

■ Further, it is irrelevant whether HNB by its actions breached the Truth In Lending Law. First, violation of the law does not discharge liability on the note. *Grandway Credit Corp. v. Brown,* 295 So.2d 714 (Fla.App.1974); *Charter Finance Co. v. Henderson,* 60 Ill.2d 323, 326 N.E.2d 372 (1975). Second, the Truth In Lending Law specifically provides that "No civil or criminal penalty provided under this subchapter for any violation thereof may be imposed upon the United States or any agency thereof . . . ." 15 U.S.C. § 1612. The FDIC acting in its corporate capacity is an agency of the federal government. See 12 U.S.C. § 1819 and § 1827; *Freeling v. FDIC,* 221 F.Supp. 955, *aff'd* 326 F.2d 971 (10th Cir. 1963). Therefore the FDIC is not subject to any claims concerning HNB's violations of the Truth In Lending Law.

■ Defendant contends that he was fraudulently induced to borrow money from HNB in order to purchase HBI stock. Since the FDIC is merely a holder of the defendant's notes, it is subject to the defense of fraud in the inducement. T.C.A. § 47–3–306(b). It is the opinion of this Court that there remains a genuine issue of material fact concerning the alleged fraud. Therefore this issue will be preserved for trial. However, this Court considers as without merit the defendant's contention that the FDIC is estopped to deny the alleged fraud. The FDIC is presently maintaining an action against Roundtree Youmans and other HNB directors for breach of statutory and common law duties of care in managing Hamilton National Bank (*FDIC v. Roundtree Youmans, et al.,* Civ. No. 1–77–209). Claims by the FDIC that the directors mismanaged the bank are not, however, admissions by the FDIC that the directors purposely misrepresented the value of the HBI stock to purchasers in order to induce borrowing from HNB. The fraud alleged in *FDIC v. Youmans* relates to fraud on stockholders and creditors. While the present defendant is a stockholder, the fraud alleged in this case relates to fraud committed against the defendant as a debtor of the bank. The frauds alleged in the two cases are not sufficiently related to justify the operation of estoppel.

■ Finally, the defendant seeks to amend the Final Pre-Trial Order to allege that HNB failed to use reasonable care to preserve the collateral securing the defendant's notes, T.C.A. § 47–9–207, and thereby impaired the collateral, thus discharging the defendant from his obligation on the notes, T.C.A. § 47–3–606(1)(b). Under Tennessee law section 47–3–606(1)(b) does not operate to discharge the original maker on a note unless the maker has altered his position to that of surety on the note. *Commerce Union Bank v. May,* 503 S.W.2d 112 (Tenn. 1973). Even if HNB impaired the collateral, the .defendant has not altered his position from principal to surety. Therefore he is not discharged from liability on the notes.

■ While the proposed Amendment does not state a defense to collection of the notes, it may state a claim for set-off. T.C.A. Section 47–9–207 imposes a statutory duty on the pledgee of collateral to exercise reasonable care in the preservation of the collateral. In the present case this duty is set out as part of the note (Court File # 1, Exhibits A–C). A failure by HNB to

comply with this duty is therefore a breach of contract. Under T.C.A. § 47–3–306 the F.D.I.C. as holder of the note is subject to:

(a) all valid claims to it [the note] on the part of any person; and

(b) all defenses of any party which would be available in an action on a simple contract;

Therefore, if HNB failed to use reasonable care to preserve the collateral and the collateral depreciated as a result, the defendant may assert claims for this depreciation as a set-off against the amount owed on the note.

The essence of the defendant's claim is that HNB, by negligence in its operation caused HBI, its parent corporation, to become insolvent, thereby depreciating the value of the defendant's HBI stock pledged as collateral on the note.

■ The duty of care a pledgee owes his pledgor is the duty to exercise reasonable care in preserving the physical well-being of the collateral and, in the case of documents evidencing a pledgor's right against third parties, the duty to preserve the rights of the pledgor. T.C.A. § 47–9–207(1). Official Comment 1 to Section 47–9–207, indicates that 9–207 does not alter but merely restates the common law rule. The reader is referred to Restatement of Security §§ 17 and 18. Comment (a) of the Restatement of Security § 18 provides, "The pledgee is not liable for a decline in the value of the pledged instruments, even if timely action could have prevented such decline." Tennessee law therefore appears to deny recovery to a pledgor whose collateral stocks have depreciated while in the hands of the pledgee. The Court must admit, however, that the situation presented by the present case is somewhat unique. Here the pledgee is a subsidiary to the corporation whose stocks were pledged as collateral. These separate business transactions of the pledgee, at least remotely, affected the value of the pledged stock. Under Tennessee common law the relationship of pledgor and pledgee is one:

" . . . of trust and confidence, imposing duties on the creditor. The as-

signor of collaterals parts with his control over them, and the assignee should be bound to use proper exertions to render them effectual for the purpose for which they were assigned." *Word v. Morgan Co.,* 37 Tenn. 35, 37 (1857).

This relationship of trust appears enhanced in this case by the unique relationship between the Bank and the pledgor, a stockholder of parent corporation stocks pledged to the Bank.

There are cases holding pledgees liable for decline in stock value when they failed to convert the stocks. *E. g., Reed v. Central National Bank of Alva,* 421 F.2d 113 (10th 1970); *Grace v. Sterling, Grace & Co.,* 30 A.D.2d 61, 289 N.Y.S.2d 632, 5 U.C.C. Reptr.Serv. 297 (N.Y.S.Ct.App.1968). These cases, however, are inapplicable. The case most nearly on point is *Empire Life Ins. Co. v. Valdak Corp.,* 468 F.2d 330 (5th Cir. 1972). In *Empire Life,* the pledgee corporation gained control of the corporation (National) whose stocks had been pledged as collateral. The pledgor alleged that the pledgee corporation had fraudulently and illegally used control of National to deplete National's assets and impair the pledgor's collateral. The Court noted that the pledgor had two separate relationships to the pledgee. First, the pledgor was a stockholder in the subsidiary corporation controlled by the pledgee. In his capacity as stockholder, the pledgor might have a cause of action against the pledgee, as parent corporation, for corporate mismanagement that resulted in devaluation of the stockholder/pledgor's shares. However, the pledgor, suing solely as a pledgor, could not support a claim for recovery by alleging mere negligence by the pledgee in his business operations. In order to recover as a pledgor, it must be shown that the pledgee corporation acted with the intent to depreciate the value of the pledgor's stocks.

■ In the present case, the defendant, in his capacity as pledgor, asserts a claim for set-off. In order to maintain an action or claim a set-off as pledgor, however, the defendant must allege that HNB acted with the specific intent to reduce the value of his

HBI shares. Therefore, it is the opinion of this Court that the defendant's allegation that HNB was negligent in conducting its business affairs and that negligence ultimately affected the defendant's stock value is insufficient to sustain a set-off for impairment of collateral.

One further question remains; that is, whether HNB was under a duty to notify the pledgor that the stock was declining in value or to sell the stock once it realized that the value was declining. A reading of Comment (a) to Section 18 of the Restatement of Security (incorporated into Tennessee common law by reference under T.C.A. § 47–9–207, Comment 1) indicates that no duty exists that would require the pledgee to give notice or sell stocks declining in value. The Seventh Circuit reached a similar conclusion when it interpreted the Illinois Commercial Code (virtually identical to T.C.A. § 47–9–207). *Capos v. Mid-America National Bank,* 581 F.2d 676 (7th Cir. 1978). The Court reasoned that to require a duty to sell collateral would cast the pledgee in the role of investment advisor. This would be an overly burdensome role since "A lender in these situations merely accepts the stock as collateral, and does not thereby itself invest in the issuing firm." *Id.* at 680.

■■■ This Court is of the opinion that a pledgee is under no duty to sell collateral stocks declining in value absent a reasonable request by the pledgor. However, the Court considers it possible for a pledgee, by his actions, to assume a duty to notify the pledgor of declining stock value so as to permit the pledgor of stock to seek sale, providing substitute collateral if necessary to secure any remaining indebtedness.

■■■ In the present case, HNB, as a subsidiary of HBI, may have had special knowledge concerning the value of HBI stock. Further, there is some evidence that HNB encouraged its employees to purchase HBI stock with the understanding that HNB would make financing available (Court File # 12, Affidavit of Gaylord S. Webb, ¶ 38–12). Finally, there is also evidence that agents of HNB represented to the defendant that the purchase of HBI stock was a sound investment (*Id.* ¶ 11). Thus HNB may have acted as an investment advisor and thereby assumed a duty to notify its pledgor of declining stock value. However, under the note, the Bank's duty of care is defined as follows:

> The undersigned [defendant] shall take all necessary steps to preserve rights against prior parties to the instrument or chattel paper constituting the collateral and shall be responsible generally for its preservation and shall be responsible generally for the preservation of all rights in any collateral pledged hereunder. The Bank shall exercise reasonable care in the custody and preservation of the collateral and shall be deemed to have exercised reasonable care if it takes such action for that purpose as the undersigned shall reasonably request in writing, but no failure to comply with any such request and no omission to do any such act requested by the undersigned shall be deemed a failure to exercise reasonable care. (Court File # 1, Exhibits A–C)

By its terms the note requires the defendant to oversee the preservation of his own collateral and request the Bank to take action necessary to preserve the collateral. The Bank's duty is to honor the request if reasonable. There is no requirement that the Bank notify the pledgor of a decline in the value of the collateral pledged. The Code (T.C.A. § 47–9–207) does not permit the pledgee to disclaim his duty of care, but it does permit the parties by contract to define the duty of care in a manner not manifestly unreasonable. T.C.A. § 47–9–207, Comment 1). The Court is of the opinion that the terms of the note are not manifestly unreasonable. *See Tatum v. Bank of Cumming,* 135 Ga.App. 675, 218 S.E.2d 677, 18 U.C.C.Rept.Serv. 171 (1975); *Brodheim v. Chase Manhattan Bank,* 13 U.C.C.Rept.Serv. 139 (N.Y.S.Ct.1973). Further, under 12 U.S.C. § 1823, the FDIC is bound only by the terms of the written agreement. Therefore, any implied duty arising by conduct between the parties can-

not be used to establish a set-off against the note.

■■■■ As a further proposed amendment to the Final Pre-Trial Order, the defendant seeks to allege the defense of failure of consideration. T.C.A. § 47–3–306(c). This defense is assertable against a mere holder but again the FDIC in its corporate capacity as liquidator receives special protection. Under 12 U.S.C. § 1823 any collateral oral agreement cannot be used to alter the face of an instrument in a manner that would defeat the FDIC's claim. The defendant's notes indicate on their face that the consideration given was the loan of money with interest in return for a promise to pay. While it is conceivable that the defendant's promise to purchase HBI stock was inducement for the loan, that inducement did not appear as consideration on the face of the note. Since the defendant does not contend that there was a failure of the money loaned him, there can be no other failure of consideration asserted against the FDIC.

The defendant's motion to be allowed to amend his answer and the Pre-Trial Order so as to assert the additional affirmative defenses of failure to protect collateral and failure of consideration will be denied.

The plaintiff's motion for summary judgment will be sustained upon all issues other than (1) the sum due upon each note herein sued upon, including interest and attorney fees to the date of trial, and (2) the affirmative defense of fraud in the inducement of the execution of the respective notes.

An order will enter accordingly.