**FEDERAL DEPOSIT INSURANCE CORPORATION, in its corporate capacity, Plaintiff,**

v.

**HUGHES DEVELOPMENT COMPANY, INC., Francis R. Hughes, and Bernadette J. Hughes, Defendants.**

**Civ. No. 4–87–223.**

United States District Court, D. Minnesota, Fourth Division.

April 12, 1988.

Karen Park Gallivan, Rider, Bennett, Egan & Arundel, Minneapolis, Minn., for plaintiff.

Ann K. Newhall, Dale M. Wagner, Moss & Barnett, Minneapolis, Minn., for defendants.

## ORDER

DOTY, District Judge.

This case comes before the Court on a motion for summary judgment by plaintiff Federal Deposit Insurance Corporation ("FDIC") and a cross motion for partial summary judgment by the defendants Hughes Development Company, Inc. ("HDCI"), Francis R. Hughes ("Mr. Hughes"), and Bernadette J. Hughes ("Mrs. Hughes").

## FACTUAL BACKGROUND

In 1982, Mr. Hughes and Guaranty State Bank of St. Paul ("Bank") executed a Combination Note, Security Agreement and Disclosure ("Cathedral Court Note") in the amount of $300,000 on behalf of HDIC. Mr. Hughes intended to use the proceeds to remodel three commercial condominium units located in the Cathedral Court complex developed by HDCI and owned by the Hugheses. To secure the note, Mr. and Mrs. Hughes signed a Security Agreement and Mortgage Deed ("Cathedral Court Mortgage"), granting a mortgage interest to the Bank in the three condominium units. Mr. and Mrs. Hughes also signed a Guaranty which provided that the couple would promptly pay any existing and future indebtedness from HDCI to the Bank.

On the same day, Mr. and Mrs. Hughes signed a Combination Note, Security Agreement and Disclosure in the amount of $100,000 ("Lombard Note"), the loan proceeds from which were to be used to remodel the family residence on Lombard Avenue, St. Paul, Minnesota. Mr. Hughes alleges that, before he and the Bank signed the loan documents, the Bank agreed to refinance the Lombard loan after completion of the home improvements. The terms of this agreement appear in a letter signed by both Mr. Hughes and Harry Jensen, the Bank's president.

In 1984, the FDIC was appointed receiver of the Bank's property and business after the Bank was adjudged insolvent. The FDIC, in its corporate capacity, purchased the Cathedral Court Note, the Cathedral Court Mortgage, the Lombard Note, and the Lombard Mortgage from the Bank. After purchasing these assets from the Bank, the FDIC discovered that the defendants had defaulted in their payments, and that the Hugheses had been delinquent in the payment of real estate taxes. The FDIC paid $8,324.07 in delinquent Cathedral Court property taxes, and $4,686.23 in delinquent real estate taxes for the Lombard property.

Approximately one month before the Bank was adjudged insolvent, Mr. Hughes allegedly sent a letter to the Bank ("rescission letter") notifying its officials that they had failed to make certain disclosures on the Lombard loan, as required by the Truth–In–Lending Act. He stated in this letter that he wished to rescind and cancel the Lombard loan agreement. Apparently, neither this letter of rescission nor the letter agreement on refinancing appeared in any of the Bank's records at the time the FDIC purchased the Lombard loan documents. In any event, the FDIC denies having any knowledge of either document's existence before the commencement of this suit.

Mr. Hughes indicates that the FDIC negotiated with him throughout the fall of 1985 in an attempt to work out an agreement for repayment of the two loans. The parties apparently did not reach a resolution. In May 1986, the FDIC notified the Hugheses that they had defaulted on both the Cathedral Court and Lombard loans and commenced this mortgage foreclosure and deficiency action.

The FDIC has moved for summary judgment on its action for foreclosure of the Cathedral Court and Lombard mortgages pursuant to Minn.Stat. §§ 581.03, 581.09 and 582.30 (1986). Defendants move for partial summary judgment dismissing the FDIC's foreclosure action on the Lombard property.

## DISCUSSION

Rule 56 of the Federal Rules on Civil Procedure provides that summary judg-

ment "shall be rendered forthwith if the pleadings, depositions, answers to the interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." Once a properly supported motion for summary judgment has been made, the burden is on the nonmoving party to produce some evidence demonstrating the existence of a factual dispute. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 2511, 91 L.Ed. 2d 202 (1986). Rule 56(e) requires the nonmoving party to go beyond the pleadings and by affidavits, depositions, answers to interrogatories, and admissions, designate "specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e); *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). The nonmoving party must produce enough evidence that a reasonable jury could return a verdict for the nonmoving party. *Anderson,* 106 S.Ct. at 2510.

## I. *Cathedral Court Mortgage*

To support this motion, the FDIC has submitted pleadings, affidavits and Bank documents indicating the existence of the mortgage, note and guaranty, and the failure of the Hugheses to make the appropriate payments on that loan. The Hugheses have admitted the execution of these obligations and the default in payment.

In response to the FDIC's motion, defendants raise three issues which, in their opinion, render summary judgment inappropriate. First, the Bank and its assignee, the FDIC, allegedly breached an agreement with the Hugheses to refinance the Lombard loans. Second, the defendants feel that the FDIC has taken inconsistent factual positions regarding the rescission letter and the interest due on the loans,

thereby raising a genuine issue of material fact. Finally, Mr. Hughes asserts that he agreed to turn over the deeds of the three condominiums to the FDIC as a settlement on the Cathedral Court loan, and as a result, he is no longer liable for the Cathedral Court Mortgage. Because the burden of producing evidence of a factual dispute rests with defendants, the Court must examine each issue to determine if they have designated specific facts which present a genuine issue for trial.

### A. Letter Agreement of June 1, 1982

■ Defendants allege that foreclosure on the Cathedral Court Mortgage is inappropriate because the Bank and its assignee, the FDIC, breached a letter agreement between the Bank and Mr. Hughes by failing to arrange a refinancing of the loans. Apparently, defendants feel that their reliance on the refinancing agreement led them to sign the loan documents, and because the FDIC failed to change the terms of the Lombard loan, the defendants are somehow relieved of liability under the notes and mortgages.

The FDIC responds that, assuming a refinancing agreement existed, it would be unenforceable against the FDIC, as a matter of law, because under 12 U.S.C. § 1823(e),[1] such a side agreement cannot diminish the FDIC's interest in an asset, unless that agreement is in writing, is executed at the same time as the loan document, and is approved by the Bank's board of directors. Defendants request this Court to deny FDIC's motion for summary judgment so that they may complete discovery to determine if the requirements of § 1823(e) were met. If the agreement is unenforceable against the FDIC as a matter of law, the Court need not determine

---

**1.** 12 U.S.C. § 1823(e) provides:

No agreement which tends to diminish or defeat the right, title or interest of the [FDIC] in any asset acquired by it under this section, either as security for a loan or by purchase, shall be valid against the [FDIC] unless such agreement (1) shall be in writing, (2) shall have been executed by the bank and the person or persons claiming an adverse interest

thereunder, including the obligor, contemporaneously with the acquisition of the asset by the bank, (3) shall have been approved by the board of directors of the bank or its loan committee, which approval shall be reflected in the minutes of said board or committee, and (4) shall have been, continuously, from the time of its execution, an official record of the bank.

the effect that a breach might have on the notes and mortgages.

To support their contention that an agreement exists, defendants point to a letter which Mr. Hughes drafted and which Harry Jensen signed. This letter does include a reference to a refinancing arrangement, which was to occur after the home improvements on the Lombard residence were completed. The record indicates, however, that the time for discovery ended on December 1, 1987. Since that time, the defendants have not shown this Court any evidence supporting their claim that the letter agreement meets the statutory requirements of § 1823(e). The FDIC states that the Bank did not have the June letter agreement in its official records and that the minutes of its board meetings do not reflect an approval of this agreement. (Affidavit of Stephen Kunde at pars. 11 and 12 (June 25, 1987)). Because the defendants have not presented any evidence to the contrary, this Court must conclude that the letter agreement of June 1, 1982 does not meet the requirements of § 1823(e) and is, therefore, unenforceable against the FDIC.

### B. Inconsistent Factual Positions

█ Defendants urge this Court to deny summary judgment because the FDIC has taken inconsistent positions with regard to the receipt and validity of Mr. Hughes' notice of rescission of the Lombard loan and to the amount of interest payments Mr. Hughes has made on the Cathedral Court loan.

First, even if the rescission letter presents an issue of fact, this letter does not affect the Cathedral Court Mortgage. The notice of rescission clearly applied only to the $100,000 Lombard loan. (*See* Plaintiff's Exhibit A.) The letter reads in pertinent part: "I hereby rescind and cancel the $100,000.00 construction loan dated June

18, 1982 made by the Bank to Francis R. Hughes and Bernadette J. Hughes for work on our home at 1030 Lombard Avenue, Saint Paul, Mn." The rescission letter never mentions the Cathedral Court Mortgage, and, therefore, does not raise any factual issues with regard to the Cathedral Court Mortgage.

Second, although the FDIC never directly disputes that the Bank received this letter, it does dispute the validity of the rescission under the Truth-in-Lending Act ("TILA"), 15 U.S.C. § 1601 *et seq.* The FDIC contends that, without the signature of Mrs. Hughes, and without a contemporaneous tender of loan proceeds from Mr. Hughes, the rescission letter is invalid. The signature and tender issues, however, are legal in nature, not factual, and constitute an insufficient basis for denial of the FDIC's motion for summary judgment on the Cathedral Court Mortgage.[2]

Finally, defendants assert that a dispute exists as to the amount of interest payments the Hughes have made on the Cathedral Court loan. Since the time of oral arguments, however, this factual discrepancy has been resolved.[3] The record before this Court indicates no issue of fact as to the interest payments which could affect the outcome of this case.

### C. Settlement Offer

█ Lastly, defendants request further time to determine the merits of their claim that the FDIC and Mr. Hughes negotiated a settlement of the Cathedral Court loan dispute. Mr. Hughes relies on the language of a letter that he sent to the FDIC on October 8, 1985 to support the contention that he agreed to deed over the property in return for the FDIC's promise to forego mortgage foreclosure. (Affidavit of Francis R. Hughes, Defendants' Exhibit D

---

**2.** The validity of the rescission will be taken up in the discussion of the Lombard Mortgage.

**3.** Both the FDIC and defendants agree that, as of September 1987, the Hugheses have made $23,211.15 in interest payments on the Cathedral Court Note, and that the current per diem accrual rate of interest is approximately $92.47. (*See* Affidavit of Francis R. Hughes at par. 3

(Sept. 1, 1987), and Affidavit of Karen Park Gallivan, Exhibit A (Schedule of Principal and Interest Due) (Sept. 17, 1987)). Similarly, both parties agree that no principal payments have been made on the loan. (Defendants' Response to Plaintiff's Requests for Admissions at par. 19 (April 3, 1987)).

(Sept. 1, 1987)). This letter constitutes the only evidence of any alleged agreement to resolve the Cathedral Court dispute.

Although discovery in this case ended December 1, 1987, the defendants have provided no evidence that the FDIC entered into any settlement negotiations, that the FDIC intended any such discussions to constitute an offer, or that Mr. Hughes' letter accepts that which was allegedly offered. Even if Mr. Hughes' alleged willingness "to sign the necessary papers to deed the property over" constitutes an acceptance, it appears that any offer had been withdrawn before Mr. Hughes sent his October 8, 1985 letter since the FDIC had requested action before September 24, 1987. Mr. Hughes failed to meet the two week deadline mentioned in the letter. This Court finds that there is insufficient evidence on which a reasonable jury could base a finding that Mr. Hughes' letter of October 8, 1985 constituted an enforceable contract.

Because the defendants have failed to provide the Court with evidence of specific factual issues with regard to the Cathedral Court property, this Court must grant summary judgment in favor of the FDIC allowing foreclosures of the Cathedral Court mortgage.

## II. *Lombard Loan*

The FDIC requests summary judgment on its claim for foreclosure on the Lombard loan. In response, the defendants request summary judgment dismissing FDIC's foreclosure action on the Lombard residence because Mr. Hughes effectively rescinded the Lombard Mortgage as allowed under the Truth–In–Lending Act and thereby voided FDIC's security interest in the residence. Further, he asserts that the Bank and its assignee, the FDIC, breached its June 1982 letter agreement to refinance the Lombard loan. Finally, he alleges that because the Lombard residence is homesteaded property, foreclosure must be stayed for six months under Minn.Stat. § 583.04 (1986).

### A. Rescission: Truth–In–Lending Act

Defendants' affirmative defense and counterclaim of rescission rest on the applicability of the TILA, both as to this particular loan with the Bank and as against the FDIC as assignee of the debt, and the validity of the rescission under the TILA.

#### 1. *Applicability of TILA against the FDIC*

■ The defendants request this Court to enforce their right to rescind a consumer loan under 15 U.S.C. § 1635,[4] and to assess damages for the Bank's failure to make the mandatory disclosures under § 1640.[5] The FDIC asserts that the entire TILA is inapplicable to the FDIC because 15 U.S.C. § 1612(b) creates a statutory exemption for governmental agencies.[6] That section provides:

(b) No civil or criminal penalty provided under this subchapter for any violation thereof may be imposed upon the United

---

**4.** Section 1635 provides in pertinent part:

(a) Except as otherwise provided in this section, in the case of any consumer credit transaction ... in which a security interest ... is or will be retained or acquired in any property which is used as the principle dwelling of the person to whom credit is extended, the obligor shall have the right to rescind the transaction ....

(b) When an obligor exercises his right to rescind under subsection (a) of this section, he is not liable for any finance or other charge, and any security interest given by the obligor ... becomes void upon such a rescission.

**5.** Section § 1640 creates a private cause of action against a non-complying creditor and provides for damages of twice the amount of any

finance charge in connection with the action, not to exceed $1,000. The rule in the Eighth Circuit is that each obligor in an individual consumer credit transaction may collect statutory damages up to $1,000. *Andersen v. Farmers Bank of Clatonia,* 640 F.2d 1347, 1349 (8th Cir.1981); *Dougherty v. Hoolihan, Neils and Boland, Ltd.,* 531 F.Supp. 717, 722 (D.Minn.1982). Where § 1640 liability is enforced, the creditor is also liable for the costs of the action and reasonable attorney fees. 15 U.S.C. § 1640(a)(3); *Dougherty,* 531 F.Supp. at 723.

**6.** The FDIC, acting in its corporate capacity, is an agency of the federal government. *See* 12 U.S.C. § 1819; 12 U.S.C. § 1827; *FDIC v. Webb,* 464 F.Supp. 520, 525 (E.D.Tenn.1978); *Freeling v. FDIC,* 221 F.Supp. 955, 956 (W.D.Okl.1962), *aff'd,* 326 F.2d 971 (10th Cir.1963).

States or any department or agency thereof, or upon any State or political subdivision thereof, or any agency of any State or political subdivision.

15 U.S.C. § 1612(b).

Because § 1612(b) clearly constitutes a statutory exemption, this Court cannot impose civil or criminal sanctions against the FDIC. The question then becomes whether rescission pursuant to § 1635 and civil damages under § 1640 constitute a civil penalty.

The § 1640 damages clearly constitute a civil penalty within the meaning of § 1612(b). First, the section, by its own terms, calls for the imposition of "civil liability" on any creditor who fails to comply with the disclosure requirements of the Act. The unambiguous language of § 1640 presents a set of civil penalties. Second, the legislative history of the Act indicates that "civil and criminal penalty" refers to § 1611 (criminal liability) and § 1640 (civil liability). H.Rep. No. 1040, 90th Cong., 2d Sess., *reprinted in* 1968 U.S.Code Cong. & Admin.News 1962, 1976 and 1988. Finally, courts have held that § 1640 provides for a civil penalty. *See e.g., Williams v. Public Finance Corp.,* 598 F.2d 349, 356 (5th Cir. 1979). Based on the language of the statute, its legislative history and judicial law interpreting § 1640, this Court finds that Congress intended governmental agencies, such as the FDIC, to be exempt from TILA claims for § 1640 civil damages.[7]

The loss of finance charges and security interest in the Lombard property which result from a § 1635 rescission are not as easily categorized as civil penalties. The Fifth Circuit, in *James v. Home Construction Company of Mobile, Inc.,* 621 F.2d 727 (5th Cir.1980), analyzed § 1635 and the declaration of the TILA's purpose in § 1601 to find that this provision does not constitute a penal sanction. *James,* 621

F.2d at 730. Although the facts of *James* are distinguishable from the present case,[8] the court's reasoning provides insight into the nature of § 1635. The court examined three factors (1) whether the purpose of the action was to redress individual wrongs or wrongs to the public; (2) whether the recovery ran to the individual or to the public; and (3) whether the recovery was disproportionate to the harm suffered. *Id.* (*citing Murphy v. Household Finance Corp.,* 560 F.2d 206, 209 (6th Cir.1977) and *Huntington v. Attrill,* 146 U.S. 657, 13 S.Ct. 224, 228, 36 L.Ed.2d 1123 (1892)).

The Fifth Circuit held that the purpose of the TILA is to enable the individual consumer to credit shop and avoid the uninformed use of credit, that the recovery under § 1635 runs to the individual and that the purpose of the rescission remedy is to restore the parties, as much as possible, to the *status quo ante. James,* 621 F.2d at 730.

■ Under this analysis, the right to rescission under § 1635 is not a civil penalty and, therefore, is a remedy outside of the scope of § 1612(b). This conclusion is consistent with the general policy of the Act "to assure a meaningful disclosure of credit terms." 15 U.S.C. § 1601(a). There is no public policy reason for disallowing a valid rescission merely because the creditor has become insolvent and has sold the underlying note and mortgage to a governmental agency. Congress specifically provided in 15 U.S.C. § 1641(c):

Any consumer who has the right to rescind a transaction under section 1635 of this title may rescind the transaction as against *any* assignee of the obligation.

15 U.S.C. § 1641(c) (emphasis added).

Had Congress intended for governmental agencies such as the FDIC to be immune from the effects of this provision, it could

---

**7.** The FDIC asserts that this Court lacks subject matter jurisdiction to impose § 1640 damages if that action is brought more than one year after the TILA violation. Because the Hugheses' claim for § 1640 damages cannot be enforced against the FDIC, this Court need not determine whether § 1640(e) constitutes a grant of subject matter jurisdiction.

**8.** In *James* the plaintiff sought to enforce his deceased mother's right to rescind a consumer loan pursuant to § 1635. The Court examined the nature of section 1635 under the TILA to determine if it constituted a penalty because, traditionally, actions for penalties do not survive the death of the plaintiff. *James,* 621 F.2d at 730.

have indicated that § 1641(c) is limited by § 1612(b). No such reference to § 1612(b) exists. The right of rescission, if validly invoked, is not a civil penalty and can be enforced against the FDIC.

The FDIC points to *Federal Deposit Insurance Corp. v. Webb,* 464 F.Supp. 520 (E.D.Tenn.1978) for the proposition that any TILA claim is inapplicable to the FDIC. In *Webb,* the FDIC purchased three promissory notes from an insolvent Bank, after which it sued defendant Webb on those notes. Webb asserted, as an affirmative defense, that the Bank had violated the TILA. The District Court for the Eastern District of Tennessee held that a TILA violation does not discharge the underlying liability on the notes and that the FDIC is not subject to any TILA claims resulting from the Bank's violations of the Act. *Webb,* 464 F.Supp. at 525. The *Webb* court, however, did not specifically address the rescission issue. It did recognize that a TILA violation cannot affect a debtor's obligation to pay off a debt. Allowing a rescission claim against the FDIC is not inconsistent with this holding because rescission merely relieves the consumer of the duty to pay interest and releases the mortgage on a dwelling. It does not affect the underlying debt. This Court, therefore, holds that *Webb* does not directly address the rescission claim, and that § 1635 of the TILA may be enforced against the FDIC.

### 2. *Applicability of TILA To This Transaction*

■ The FDIC further asserts that the TILA is inapplicable to the Lombard transaction because Mr. Hughes used the $100,000 for business purposes. The disclosure requirements of the Act, which obligate creditors to provide consumers with information regarding the various credit terms available, apply only to consumer credit transactions "in which the party whom credit is offered or extended is a natural person, and the money, property, or services which are the subject of the transaction are primarily for personal, family, or household purposes." 15 U.S.C. § 1602(h). The TILA does not apply to:

(1) Credit transactions involving extensions of credit primarily for business, commercial, or agricultural purposes, or to government or governmental agencies or instrumentalities, or to organizations.

15 U.S.C. § 1603(1).

To determine the applicability of the TILA, this Court must "examine the transaction as a whole and the purpose for which the credit was extended in order to determine whether this transaction was primarily consumer or commercial in nature." *Tower v. Moss,* 625 F.2d 1161, 1166 (5th Cir.1980). Although the nature of the transaction could present a factual issue, this Court finds that the FDIC has failed to provide any evidence, other than speculation, that the Lombard loan was used for commercial purposes. "In such a situation, there can be 'no genuine issue as to any material fact'...." *Celotex Corp.,* 106 S.Ct. at 2553.

First, the Lombard Note and Security Agreement indicate that the purpose of the loan was for "home improvements". (Plaintiff's Exhibit E). When, as in the present case, a creditor extends credit for home improvements, that loan constitutes a consumer transaction within the meaning of the Truth–In–Lending Act. *See Gerasta v. Hibernia National Bank,* 575 F.2d 580, 582 (5th Cir.1978) (home improvement loan constitutes consumer transaction within meaning of TILA). The designation in the Lombard loan gave the Bank and the FDIC notice that the Hugheses intended to use the proceeds for personal or household purposes.

Second, Mr. Hughes' letter of June 1, 1982 specifies that the Bank agreed to lend the Hugheses $100,000 "for the purpose of improvements to their property at 1030 Lombard Avenue, Saint Paul, Minnesota." (Hughes Memo in Support, Exhibit A). The rescission letter of June 20, 1984 similarly indicates that Mr. Hughes had intended the loan to cover "work on our home at 1030 Lombard Avenue...." Affidavit of Francis R. Hughes, Exhibit A (Sept. 1, 1987).

Finally, the fact that Mr. Hughes directly deposited the Lombard loan proceeds into

the HDCI's Bank account does not prove, as a matter of law, that the loan was commercial. Although the Bank may have distributed the proceeds directly to HDCI, there is no evidence indicating that HDCI did not use the money for improvements on the Lombard residence. Mr. Hughes indicates that HDCI used the money to make improvements on the Lombard home. (Affidavit of Francis R. Hughes at Pars. 3–5 (Sept. 9, 1987)). No evidence exists to contradict Mr. Hughes' statement that, at the time the Bank executed the loan documents, the loan to the Hugheses of $100,-000 financed improvements on the Hughes residence. Accordingly, the Court has concluded that the Lombard transaction constituted a consumer transaction within the meaning of the Truth–In–Lending Act.

### 3. *Validity of the Rescission*

Finally, the FDIC asserts that even if the TILA is applicable against the FDIC and to this transaction, the letter of rescission was legally insufficient to rescind the transaction. To determine the validity of Mr. Hughes' letter of rescission, this Court must determine whether this letter satisfies the statutory requirements. Under 12 C.F.R. § 226.23, to exercise the right to rescind:

> [T]he consumer shall notify the creditor of the rescission by mail, telegram or other means of written communication. Notice is considered given when mailed
> . . . .

12 C.F.R. § 226.23(a)(2).

The consumer has three days after consummation of the transaction to exercise the right to rescind unless the Bank fails to make certain disclosures, in which case the consumer's right to rescind extends for three years. 12 C.F.R. § 226.23(a)(3).

Under the TILA, a creditor must provide the debtor with notice of the right to rescind, and disclosures of the annual percentage rate, the finance charge, the amount financed, the total of payments, and the payment schedule. 12 C.F.R. §§ 226.23(a)(3) n. 2 and 226.23(b). Mr. Hughes alleges that the Bank did not make all of the required disclosures and the FDIC concedes that these disclosures did

not appear in the Bank's files. Mr. Hughes, thus, had the right to rescind the security interest of the loan transaction.

The record shows that Mr. Hughes mailed a letter on June 20, 1984 requesting rescission and cancellation of the Lombard loan. (Affidavit of Francis R. Hughes, Exhibit B (June 30, 1987)). The FDIC does not dispute that Mr. Hughes mailed this letter, or that Mr. Hughes asserted his right to rescind in a timely manner. Instead, the FDIC asserts that the notice of rescission was ineffective because Mrs. Hughes failed to sign the letter and because Mr. Hughes failed to tender the loan proceeds with the notification of rescission. The FDIC also alleges that even if the rescission fulfills the statutory requirements, it cannot be enforced against the FDIC because the agency is a holder in due course.

■ First, the absence of Mrs. Hughes' signature does not render the rescission void. Regulation Z provides:

> When more than one consumer in a transaction has the right to rescind, the exercise of the right by one consumer shall be effective as to all consumers.

12 C.F.R. § 226.23(a)(4).

The failure of Mrs. Hughes to sign the June 20, 1984 letter is irrelevant in light of this regulation. The rescission of Mr. Hughes is imputed to Mrs. Hughes. *See* 12 C.F.R. Part 226, Supp. I, par. 23(a)(4) (if both husband and wife have the right to rescind a transaction, either spouse acting alone may exercise the right and both are bound by the rescission); *Etta v. Seaboard Enterprises, Inc.*, 674 F.2d 913, 918 (D.C. Cir.1982) (rescission by daughter held attributable to mother when property was jointly held).

■ Second, the FDIC indicates that it was not aware of the rescission letter until April 1987 when it received a copy of the letter in connection with this suit. (Affidavit of Scott McMillan at par. 2 (Sept. 2, 1987)). Although this Court recognizes that the FDIC may have had no knowledge of the rescission claim when it purchased

the loan documents from the Bank, this fact does not protect the FDIC.

The FDIC is correct in asserting that it receives special treatment when a debtor asserts a defense against a note. In *Federal Deposit Insurance Corp. v. Wood,* 758 F.2d 156 (6th Cir.1985), *cert. denied,* 474 U.S. 944, 106 S.Ct. 308, 88 L.Ed.2d 286 (1985), the Sixth Circuit Court of Appeals stated:

> [W]hen the FDIC in its corporate capacity, as part of a purchase and assumption transaction, acquires a note in good faith, for value, and without actual knowledge of any defenses against the note, it takes the note free of all defenses that would not prevail against a holder in due course.

*FDIC v. Wood,* 758 F.2d at 161. *See also FDIC v. Armstrong,* 784 F.2d 741, 745 (6th Cir.1986). The Hugheses, however, do not raise a defense against the Lombard Note. Their rescission claim merely affects the FDIC's security interest.

The statutory language of both § 1641(a) and § 1641(c) indicates that the rescission claim may be asserted against any assignee. Under § 1641(a), a debtor may sue for a TILA violation if the violation is apparent from the assigned documents. The FDIC does not contest the fact that the Hugheses received none of the required disclosures. Similarly, under § 1641(c), a consumer may rescind a transaction as against any assignee. Thus, when the FDIC purchases assets secured by mortgages on principal dwellings and the insolvent bank fails to provide the required disclosures, the FDIC remains subject to the consumer's right to rescind.

■ Finally, § 1635 does not allow creditors to force a debtor to tender loan proceeds when that debtor rescinds a consumer loan. The language of the statute and case law indicate that an obligor need not tender the loan proceeds until the creditor has released the security interest. Section 1635(b) provides in pertinent part:

> Within 20 days after receipt of a notice of rescission, the creditor shall return to the obligor any money or property given as earnest money, downpayment, or otherwise, and shall take any action necessary or appropriate to reflect the termination of any security interest created under the transaction. If the creditor has delivered any property to the obligor, the obligor may retain possession of it. *Upon the performance of the creditor's obligations under this section, the obligor shall tender the property to the creditor, except that if return of the property in kind would be impracticable or inequitable, the obligor shall tender its reasonable value.*

15 U.S.C. § 1635(b) (emphasis added).

The statute clearly provides that the obligor is required to return property received from the creditor only after the creditor releases the security interest. *Dougherty,* 531 F.Supp. at 722; *Powers v. Sims and Levin,* 542 F.2d 1216, 1221 (4th Cir.1976); *Gerasta,* 575 F.2d at 584; *Palmer v. Wilson,* 502 F.2d 860, 862 (9th Cir.1974).

■ It has, however, been recognized that rescission under the TILA is an equitable remedy. The purpose of rescission is to return the parties to the position they occupied prior to the transaction. Therefore, the courts may condition the continuing right of rescission on the return of property or money to the creditor. *Dougherty,* 531 F.Supp. at 722; *Powers,* 542 F.2d at 1221; *Palmer,* 502 F.2d at 862. Although the Hugheses concede that they are liable for the $100,000 principal, the Court is concerned that the Hugheses' apparently weak financial position will prevent them from repaying the principal. Therefore, to protect the right of the FDIC to return of the principal, the Hugheses' continuing right of rescission will be conditioned upon tender of the amount advanced within a reasonable period. *See LaGrone v. Johnson,* 534 F.2d 1360, 1362 (9th Cir.1976) (rescission conditioned upon repayment of the principal because debtor had declared bankruptcy).

This Court has determined that the rescission letter of June 20, 1984 constituted a valid rescission of the Lombard loan. The FDIC must therefore release the security interest on that property after the Hugheses tender the $100,000 to the FDIC.

Generally, under § 1635(b), the debtor must tender the loan proceeds within a reasonable time after the creditor has released any security interest created under the loan transaction. *Gerasta v. Hibernia National Bank,* 575 F.2d 580, 584 (5th Cir.1978). In exercising its equitable powers, the Court does not intend to abrogate the debtor's obligation to tender the principal within a reasonable time. Therefore, defendants must tender the principal within one year, receiving credit for the interest paid and with credit to the FDIC for the delinquent real estate taxes it paid on the Lombard property.

### B. Minnesota Mortgage Moratorium Act

This Court need not determine whether the Hugheses have properly requested a six-month stay of foreclosure under Minn. Stat. § 583.04. Because the Lombard Mortgage is void as a result of the rescission letter of June 20, 1984, the FDIC cannot foreclose on the Lombard property unless the Hugheses fail to tender the $100,000 principal within the time designated.

Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment as to the Cathedral Court Mortgage is granted. Judgment shall be entered for $300,000 plus any unpaid interest against defendants. Pursuant to Minn.Stat. § 581.03 this Court orders foreclosure of the Cathedral Court condominium units to satisfy the debt. The defendants shall also pay to the FDIC the $8,324.07 of real estate taxes which the governmental agency paid on the Cathedral Court property. The Court also awards to the FDIC its attorney fees as agreed in the Cathedral Court Mortgage. In the event the foreclosure sale fails to fully satisfy this amount, the FDIC may obtain a deficiency judgment against the defendants. Minn.Stat. § 582.30(1)(a)(2);

2. Plaintiff's motion for summary judgment as to the Lombard Mortgage is denied;

3. Defendants' motion for summary judgment as to the Lombard Mortgage is granted in part. Defendants shall tender the $100,000 principal under the Lombard Note to the FDIC within one year from the date of this Order, at which time the FDIC will release its security interest. The Hugheses shall receive credit for interest paid and the FDIC shall receive credit for the $4,686.23 paid for delinquent real estate taxes on the Lombard property. Because the Hugheses' continuing right of rescission is conditioned upon their tender of the funds to the FDIC, failure to tender the funds within one year will entitle the FDIC to foreclose on the Lombard loan.