**FEDERAL DEPOSIT INSURANCE CORPORATION, Plaintiff,**

v.

**MONTERREY, INC., et al., Defendants.**

**Civ. No. 86–0130 (RLA).**

United States District Court,
D. Puerto Rico.

March 16, 1994.

998

Gustavo A. Gelpi, Feldstein, Gelpi, Hernandez & Gotay, Old San Juan, PR, for plaintiff.

John M. Garcia, Garcia & Fernandez, Hato Rey, PR, for defendants.

### OPINION AND ORDER

ACOSTA, District Judge.

Plaintiff, FEDERAL DEPOSIT INSURANCE CORPORATION (FDIC), instituted these collection proceedings in its corporate capacity seeking payment on a promissory note in the principal amount of $170,000.00. Named defendants are: MONTERREY, INC. (MONTERREY), ANTONIO POU, JR. (POU), his wife ILBA MAIDA ESTAPE, and the conjugal partnership constituted by them. We have before us cross motions for summary judgment. Defendants have de-

nied liability claiming that they do not owe any monies, that the FDIC is not a "bona fide" purchaser and that there have been violations to the Truth–In–Lending Act. Further, they claim that MRS. POU and the conjugal partnership cannot be held responsible for any amounts as a result of the underlying transactions.

## BACKGROUND

The note subject of these proceedings was executed by POU and delivered to GIROD TRUST CORPORATION (GTC) as evidence of loan # 21–02–00–623 in the amount of $170,000.00 together with a Continuing Guaranty Without Collateral, in the same principal amount. These credits were subsequently acquired by the FDIC when GTC failed in August 1984,[1] in accordance with existing provisions of the Federal Deposit Insurance Act, particularly, 12 U.S.C. § 1823(e) (1979), which authorized the Corporation to purchase certain assets from the receiver of a failed bank.[2]

Defendants contend that issues of fact preclude summary judgment or, in the alternative, the purportedly uncontested facts require that summary judgment be entered in their favor. As the basis for their request, defendants allude to the alleged circumstances under which POU subscribed to the obligation sought to be collected, such as signing the loan documents "in blank". They also claim that neither MRS. POU nor the conjugal partnership may be held liable for the obligation because she did not sign the note and Guaranty and they derived no benefit from the transaction. As to MONTERREY, they contend that it did not profit from the transaction; the documents were signed in blank and a corporate resolution authorizing POU to bind the corporation did not

exist. Finally, they argue that there is an issue as to "[w]hether or not Mr. Antonio Pou, Jr. was required to assert written defenses or objection to the obligations object of this action prior to when he did in fact object therein." Defendants' Statement of Material Facts in Dispute ¶ 11.

## THE FACTS

The Court, having reviewed the motions as well as all documents filed by the parties, hereby finds that the following material facts are not in dispute:

1. At all times pertinent to the transactions involved in this action, POU was married to ILBA MAIDA ESTAPE.

2. At all relevant times, POU was the president of MONTERREY, a non-incorporated entity,[3] owned by him and his spouse ILBA MAIDA ESTAPE.

3. On July 2, 1984, POU executed a loan application on behalf of MONTERREY where he also agreed to become a joint obligor for said loan. The loan was assigned # 21–02–00623–4 by GTC.

4. As evidence of said loan, POU executed and delivered to GTC a note in the principal amount of $170,000.00, payable on demand, with interest at a rate of "Citibank Prime". The note and a Continuing Guaranty Without Collateral (Guaranty) were signed by POU, both as president of MONTERREY and personally, as joint obligor together with MONTERREY.

5. As of the date GTC ceased operations, neither POU nor anyone else acting on behalf of MONTERREY had notified GTC, in writing, of any defense or factual or legal objection to MONTERREY's obligation pursuant to loan # 21–02–00623–4 or to POU's

---

**1.** The FDIC, in its corporate capacity, acquired certain assets of GTC from the FDIC as receiver of the failed bank. The nature of this type of transaction is described in *FDIC v. de Jesús Vélez*, 678 F.2d 371, 374 (1st Cir.1982) and *FDIC v. Ashley*, 585 F.2d 157, 160–64 (6th Cir.1978).

**2.** Although this action arose prior to the enactment of the Financial Institutions, Reform, Recovery, and Enforcement Act of 1989 (FIRREA), which modified certain provisions of the Federal Deposit Insurance Act, none of the changes af-

fected § 1823(e), part of which is now codified as 12 U.S.C. § 1823(d) (1989).

**3.** Apparently there were some difficulties utilizing the name of MONTERREY for the corporation and the entity was ultimately incorporated and registered under the name of BARRANCAS, INC. We find, however, that the legal name is immaterial to the defendants' liability in this action and therefore, will continue referring to the defendant corporation as MONTERREY.

obligation as joint obligor under the note and Guaranty.

5. The first time POU asserted any defense or objection to the obligation of MONTERREY or to the Guaranty was after receiving a collection letter from FDIC.

6. Neither GTC nor FDIC have received any payment on account of the principal or interest on the loan subject of these proceedings.

7. According to the GTC records, the proceeds of the loan to MONTERREY were disbursed on July 5, 1984. Part of these monies were credited to an outstanding indebtedness of "Mi Tacita Coffee Break" ("MI TACITA") and the balance was used to pay a personal obligation of POU with GTC.

8. At all relevant times, POU was the president and sole stockholder of "MI TACITA" and he and his wife were the officers and directors thereof.

## SUMMARY JUDGMENT STANDARD

The purpose behind the summary judgment procedure is to avoid unnecessary trials. Fed.R.Civ.P. 56(c) provides for the rendering of judgment if the moving papers and pleadings "show that there is no genuine issue as to a material fact and that the moving party is entitled to judgment as a matter of law". Not all factual disputes will preclude summary judgment. Only those that are "material" will operate as a bar, that is, "only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

A genuine issue exists when there is evidence sufficient to support rational resolution of the point in favor of either party. A genuinely disputed issue concerns a material fact if the fact carries with it the potential to affect the outcome of the suit under the applicable law.

*Nereida–González v. Tirado–Delgado*, 990 F.2d 701, 703 (1st Cir.1993) (citations omitted).

Once FDIC submitted its duly supported motion for summary judgment, the burden shifted to the defendants to come forth with evidence to substantiate the existence of a factual dispute as would preclude summary judgment. Conclusory allegations are not sufficient to meet this burden. *FDIC v. Anchor Properties*, 13 F.3d 27 (1st Cir.1994).

FDIC has established that POU signed the note personally and on behalf of MONTERREY; that the loan proceeds as evidenced by the GTC records were applied to pay-off POU's personal and MI TACITA's preexisting indebtedness with GTC; that at all pertinent times POU was married to ILBA MAIDA ESTAPE and had established with her a conjugal partnership, and that prior to the closing of the GTC operations and the acquisition of this asset by FDIC, POU had consented without objection to allowing GTC to retain the signed note and Guaranty and to carry and maintain these as a valid obligation.

We find that neither defendants' statement of disputed facts nor POU's affidavit set forth any material facts or circumstances which raise a genuine issue regarding defendants' obligations and the amount due. The factual issues suggested by defendants are predicated on either conclusory statements or inadmissible evidence, or are otherwise immaterial to the determination of defendants' liability. POU's affidavit and other pleadings on record do not proffer facts which substantiate factual issues that could potentially affect the outcome of the litigation. Therefore, defendants have not met the requirements of Rule 56(e) in their response to plaintiff's summary judgment request.

Based on the record, we find that the factual issues asserted by defendants are insufficient under Fed.R.Civ.P. 56(c) to defeat FDIC's motion. Further, the undisputed facts do not support a finding of summary judgment in defendants' favor.

## APPLICABLE LAW

The present action was brought by FDIC, in its corporate capacity, to collect on an asset acquired from a failed bank. Under the Federal Deposit Insurance Act, "[a]ll suits of a civil nature to which the Corpora-

tion shall be a party shall be deemed to arise under the laws of the United States ..." 12 U.S.C. § 1819 (1976)[4]. Given the choice of law prescribed by Congress, resolution of the claim before us is governed basically by federal statute[5] and common law, *D'Oench, Duhme & Co., Inc. v. FDIC*, 315 U.S. 447, 456, 62 S.Ct. 676, 679 86 L.Ed. 956 (1942). This choice of federal substantive law has been followed in both pre-FIRREA and post-FIRREA litigation in this Circuit. *FDIC v. Longley I Realty Trust*, 988 F.2d 270, 272–74 (1st Cir.1993); *FDIC v. World Univ., Inc.*, 978 F.2d 10, 13 (1st Cir.1992); *FDIC v. O'Melveny & Meyers*, 969 F.2d 744, 751 (9th Cir.1992), *cert. granted*, —— U.S. ——, 114 S.Ct. 543, 126 L.Ed.2d 445 (1993); *Baumann v. Savers Fed. Sav. & Loan Assoc.*, 934 F.2d 1506, 1514–15 (11th Cir.1991), *cert. den.*, —— U.S. ——, 112 S.Ct. 1936, 118 L.Ed.2d 543 (1992); *FDIC v. Municipality of Ponce*, 904 F.2d 740, 745 (1st Cir.1990); *FDIC v. De Jesús Vélez*, 678 F.2d 371, 374–75 (1st Cir. 1982); *Santoni v. FDIC*, 677 F.2d 174, 178 (1st Cir.1982).

As we will further discuss below, the defenses asserted by defendants fail under applicable federal law.

### *FDIC—Holder in Due Course*

■ Defendants contend that FDIC is not a holder in due course because of the alleged circumstances under which the loan, as well as the note and Guaranty evidencing the same were executed. They challenged the "good faith" of the FDIC in the purchase of the note as their third affirmative defense in the answer to the complaint. Apart from the fact that this particular matter was not pressed or argued further in the case, the good faith of the FDIC in the purchase of assets of insolvent banks has been judicially recognized. *FDIC v. de Jesús Vélez*, 678

F.2d at 374; *Gunter v. Hutcheson*, 674 F.2d 862, 874 n. 16 (11th Cir.) *cert. den.*, 459 U.S. 826, 103 S.Ct. 60, 74 L.Ed.2d 63 (1982); *Gilman v. FDIC*, 660 F.2d 688, 694–95 (6th Cir.1981); *FDIC v. Ashley*, 585 F.2d 157, 160–62 (6th Cir.1978); *FDIC v. Godshall*, 558 F.2d 220, 222–23 (4th Cir.1977).

When assets are acquired from a failed bank pursuant to a purchase and assumption transaction,[6] as has admittedly occurred with respect to the note and Guaranty at issue in this case, the FDIC, is deemed a holder in due course with respect thereto. Although the FDIC's rights "are not contingent on the FDIC's holder-in-due-course status", *FDIC v. de Jesús Vélez*, 678 F.2d at 375, the holder in due course status does afford FDIC an absolute defense from claims such as those asserted by defendants herein.

The holder in due course rule was first formulated in *Gunter v. Hutcheson*, 674 F.2d at 873 where the Court stated:

> [A]s a matter of federal common law, the FDIC has a complete defense to state and common law fraud claims on a note acquired by the FDIC in the execution of a purchase and assumption transaction, for value, in good faith, and without actual knowledge of the fraud at the time the FDIC entered into the purchase and assumption agreement.

The purpose behind this ruling is to afford FDIC protection from post-closing defenses such as those asserted herein. The rationale of the *Gunter* rule has been followed in this Circuit to, likewise, foster the purchase and assumption transaction. *In re Columbus Ave. Realty Trust*, 968 F.2d 1332, 1351 (1st Cir.1992).

While the *Gunter* opinion and its progeny compel a conclusion that in this case the

---

4. In enacting FIRREA, Congress amended § 1819 to expand the jurisdiction of federal courts to include cases in which the Corporation, in addition to its corporate capacity, was acting as receiver of a failed insured institution by adding the phrase "in any capacity". 12 U.S.C. § 1819(b)(2)(A).

5. Both the old law and FIRREA set forth the requirements to determine the validity of agreements which tend to diminish or defeat the interest of the FDIC, in any asset acquired pursuant

to a purchase and assumption transaction. *See* 12 U.S.C. § 1823(e).

6. The fact that the asset was acquired pursuant to a purchase and assumption transaction was asserted in ¶ 7 of the complaint which defendants denied for lack of information and belief. However, defendants have failed to specifically challenge or proffer any evidence to establish otherwise.

FDIC is a holder in due course with respect to the note and Guaranty involved herein, other statutory and non-statutory protection also bar the defenses raised in this action.

### *"The Personal Favor" Defense*

■ According to defendants, in July 1984 POU visited the GTC's Ponce branch and, in response to the manager's request, POU "sign[ed] some documents for [the manager] to have in his record", in order to resolve problems with the bank's examiners (POU's affidavit ¶ 5). This allegation, while an admission that POU lent himself to a deceptive practice by the branch manager, is not permissible or material with respect to an asset acquired pursuant to a purchase and assumption transaction. Both 12 U.S.C. § 1823(e) and the doctrine of *D'Oench*, as described below, bar such defenses to the note and Guaranty at issue in these proceedings. This is precisely the type of conduct which led the United States Supreme Court to formulate a policy barring post-closing defenses aimed at defeating or diminishing FDIC's rights with respect to assets acquired from a failed bank.

> "The defendant may not have intended to deceive any person, but, when she executed and delivered to the plaintiff bank an instrument in the form of a note, she was chargeable with knowledge that, for the accommodation of the bank, she was aiding the bank to conceal the actual transaction. Public policy requires that a person who, for the accommodation of the bank executed an instrument which is in form a binding obligation, should be estopped from thereafter asserting that simultaneously the parties agreed that the instrument should not be enforced."

*D'Oench, Duhme & Co., Inc. v. FDIC*, 315 U.S. 447, 459, 62 S.Ct. 676, 680, 86 L.Ed. 956 (1942) (quoting from *Mount Vernon Trust Co. v. Bergoff*, 272 N.Y. 192, 194, 5 N.E.2d 196, 197). In the same opinion, the Supreme Court also outlined the test to determine if defenses, based on circumstances such as those alleged herein, can be asserted against the FDIC.

The test is whether the note was designed to deceive the creditors or the public authority or would tend to have that effect. It would be sufficient in this type of case if the maker lent himself to a scheme or arrangement whereby the banking authority on which respondent relied in insuring the bank was or was likely to be misled. *Id.* 315 U.S. at 460, 62 S.Ct. at 681. In effect, the so called "favor" alleged by POU is nothing more than the type of arrangement proscribed by *D'Oench*.[7]

> As we held ... it is the "evil tendency" of the acts to contravene the policy governing banking transactions which lies at the root of the rule.
>
> Those principles are applicable here because of the federal policy evidenced in this Act to protect respondent, a federal corporation, from misrepresentations made to induce or influence the action of respondent, including misstatements as to the genuineness or integrity of securities in the portfolios of banks which it insures or to which it makes loans. Those principles call for an affirmance of the judgment below.

*Id.* at 459, 62 S.Ct. at 680 (citations omitted).

The principles of *D'Oench* are applicable herein, as otherwise "the FDIC's effectiveness as an insurer would be impaired." *FDIC v. de Jesús Vélez*, 678 F.2d at 376. The scope of protection bestowed on federal regulatory agencies by Congress is further exemplified by 12 U.S.C. § 1823(e), which provides that no agreement which tends to diminish the interest of the FDIC in an asset acquired from a closed bank is enforceable against the FDIC unless the agreement, or "favor", as alleged in this case, meets certain specific requirements. This provision reflects a Congressional intention to afford special protection to assets acquired by FDIC that are not available to ordinary holders of commercial paper and are not dependent on whether FDIC qualifies as a holder in due course under state law. *FDIC v. de Jesús Vélez*, 678 F.2d at 375 ("the FDIC's rights

---

7. Additionally, the admission that the purpose of the note was to deceive the examiners constitutes a felony both under state and federal law. P.R.Laws Ann. tit. 7, § 115 (1981) and 18 U.S.C. §§ 1001, 1005, 1007.

under § 1823 are not contingent on the FDIC's holder-in-due course status"); *FDIC v. C.A. Const. Corp.*, 607 F.Supp. 984, 986 (D.P.R.1985).

The scope of the FDIC's protection was significantly expanded by the Supreme Court in *W.T. Langley v. FDIC*, 484 U.S. 86, 96, 108 S.Ct. 396, 403, 98 L.Ed.2d 340 (1987) to include conditions of repayment within the scope of the term "agreement" to which the requirements of 12 U.S.C. § 1823(e) attach.

> We can safely assume that Congress did not mean "agreement" in § 1823(e) to be interpreted so much more narrowly than its permissible meaning as to disserve the principle of the leading case [of *D'Oench, Duhme & Co.*], applying that term to FDIC-acquired notes. Certainly, one who signs a facially unqualified note subject to an unwritten and unrecorded condition upon its repayment has lent himself to a scheme or arrangement that is likely to mislead the banking authorities, whether the condition consists of performance of a counterpromise (as in D'Oench, Dhume) or of the truthfulness of a warranted fact.

*Id.* at 92–93, 108 S.Ct. at 402. The protection of *D'Oench* and § 1823(e) also extends to the Guaranty in question. *See FDIC v. P.L.M. Intern., Inc.*, 834 F.2d 248, 254–55 (1st Cir.1987). Having signed, albeit in blank, a "facially unqualified" note, defendants cannot now assert the alleged "favor" as a defense to FDIC's claim on the note. Defendants do not argue, much less establish by affidavit or otherwise, that the deceptive "favor" complies with the requirements of § 1823(e).

Based on the foregoing, defenses not conforming with the requirements of § 1823(e) may not be asserted to defeat FDIC's interest on the $170,000.00 note.

*The "Lack of Consideration" Defense*

■ Defendants have alleged that neither MONTERREY, POU nor the conjugal partnership benefitted from the loan. On the other hand, they concede that the proceeds of the loan were applied to the repayment of POU's and MI TACITA's pre-existing indebtedness. On its face, the note states that it was issued "for value received". That presumption is not rebutted by the alleged circumstances for which the note was given.[8]

Following the closing of GTC and the subsequent acquisition of the asset by FDIC, lack of consideration is likewise unavailable as a defense under federal law. *FDIC v. Bernstein*, 944 F.2d 101, 108 (2d Cir.1991) (failure of consideration for a guaranty is not a defense); *Twin Cons. Inc. v. Boca Raton, Inc.*, 925 F.2d 378, 382 (11th Cir.1991) (FDIC is immune from the defense of failure of consideration); *FDIC v. Leach*, 772 F.2d 1262, 1267 (6th Cir.1985) (*D'Oench* doctrine and 12 U.S.C. § 1823(e) bar failure of consideration defense).

Based on the foregoing, failure of consideration or failure to receive a benefit by either MONTERREY or the conjugal partnership is not a defense to FDIC's claim as a matter of federal law.

*Violation of the Truth in Lending Act*

■ As their Fourth Affirmative Defense, defendants allege violation of the truth in lending provisions regarding this loan. No evidence was submitted in the opposition to summary judgment to substantiate such a violation. Further, even assuming that such a showing had been made, this defense would have been unavailable as a matter of law.

First, defendants failed to make the defense a matter of record prior to the closing of GTC as required by 12 U.S.C. § 1823(e) and *D'Oench.*

8. Under state law, "[e]very negotiable instrument is deemed prima facie to have been issued for valuable consideration, and every person whose signature appears thereof appears to have become a party thereto for value". P.R.Laws Ann. tit. 19, § 41 (1989). According to POU, the purpose of the note was to "accommodate [the Bank] with bank regulators" (Pre Trial Order, Defendants' Factual Version of the Case). As an accommodating party, defendants cannot deny liability on the note simply because they did not receive value therefore. P.R.Laws Ann. tit. 19, § 46 (1989). Furthermore, under state law a surety or guarantor is obligated "to satisfy a debt even though he may not have received any profit in the transaction". *Planned Credit of P.R., Inc. v. Page*, 3 Official Translations of the Supreme Court of P.R. 344, 355–56 (1975).

While the borrower who has relied upon an erroneous or even fraudulent unrecorded representation has some claim to consideration, so do those who are harmed by his failure to protect himself by assuring that his agreement is approved and recorded in accordance with the statute.

*W.T. Langley v. FDIC,* 484 U.S. at 94, 108 S.Ct. at 403. Instead, the borrowers in this case remained silent with respect to the alleged truth in lending violation until after the bank had closed and loan # 21–02–00623–4 had been purchased by the FDIC in its corporate capacity.

Aside from the failure of this defense to meet the requirements of § 1823, *D'Oench* and *Langley,* the FDIC, as an agency of the United States, is exempt from any civil or criminal penalties provided by the Truth In Lending Act (TILA), 15 U.S.C. § 1612(b).

Further, it is irrelevant whether HNB by its actions, breached the Truth In Lending Law. First, violation of the law does not discharge liability on the note. Second, the Truth In Lending Law specifically provides that "No civil or criminal penalty provided under this subchapter for any violation thereof may be imposed upon the United States or any agency thereof...." 15 U.S.C. .§ 1612. The FDIC acting in its corporate capacity is an agency of the federal government. See 12 U.S.C. § 1819 and § 1827. Therefore the FDIC is not subject to any claims concerning HBN's violations of the Truth In Lending Law.

*FDIC v. Webb,* 464 F.Supp. 520, 525 (E.D.Tenn.1978) (citations omitted); *FDIC v. Hughes Development Co., Inc.,* 684 F.Supp. 616, 621–22 (D.Minn.1988).

Lastly, TILA does not apply to credit transactions carried out "primarily for busi-

ness, commercial or agricultural purposes ... or to organizations", 15 U.S.C. § 1603(1). According to the loan application, its purpose was commercial. Therefore, it is clear that the MONTERREY loan was not subject to the provisions of the Truth in Lending Act. *FDIC v. Hughes Development Co., Inc.,* 684 F.Supp. at 623.[9]

## LIABILITY OF WIFE AND CONJUGAL PARTNERSHIP

The defense that neither MRS. POU nor the conjugal partnership are liable because she did not sign the note and Guaranty and that the conjugal partnership did not benefit from the transaction is, likewise, insufficient to defeat the claim of FDIC under both state and federal law.[10]

### Puerto Rico Law

Article 1308 of the Civil Code of Puerto Rico provides that the conjugal partnership shall be liable for "all debts and obligations contracted during the marriage". P.R.Laws Ann. tit. 31, § 3661 (1990). In *Banco de Ahorro del Oeste v. Santos,* 12 Official Translations of the Supreme Court of P.R. 91, 100–101 (1982), the Court ruled that any of the spouses, acting individually, may execute acts which obligate the conjugal partnership.

Consequently we hereby hold that personal loans taken by any of the spouses during the marriage are binding on the marital community, but that shall not be the case for those taken for the borrower's own benefit, that is, those not intended to serve the interest of the family, or those made with the purpose of injuring or defrauding the other spouse. The burden of proof rests initially on the spouse who denies his liability or that of the marital

---

9. It is important to note that the sole remedy available for a TILA violation would be rescission of the transaction. *See* 12 CFR § 226.23(a)(2) and (3). Apart from the fact that such a relief has not been requested in this case, rescission would entail the return of the loan proceeds. *See* 15 U.S.C. § 1635(b) and *FDIC v. Hughes Dev. Co., Inc.,* 684 F.Supp. at 625. Thus, FDIC would still be entitled to judgment as a matter of law for $170,000.00.

10. Even though federal law governs in this case, reference to state law is appropriate where neither a statute nor the common law provide a rule regarding the rights and obligations of a conjugal partnership. To the extent that state law "does not interfere with federal objectives and allow a rational resolution of the dispute, it shall be incorporated into the federal law." *FDIC v. Armstrong,* 784 F.2d 741, 744 (6th Cir.1986). (Citing *D'Oench,* 315 U.S. at 473–74, 62 S.Ct. at 686–87 (Jackson, J., concurring)).

community. The burden, though, may be easily inverted.

*Accord, WRC Properties, Inc. v. Santana,* 116 D.P.R. 1, 27 (1985).

The statement of the defendants with respect to the use given to the proceeds of the loan fall far from showing that the conjugal partnership is not accountable for said debts; on the contrary it further substantiates the presumption of Article 1308. The existence of the conjugal partnership established by POU and ILBA MAIDA ESTAPE at the time that the obligations (POU's, MI TACITA'S and MONTERREY's obligations) were incurred is not denied here. Defendants have neither alleged nor established any of the exemptions set forth in *Banco de Ahorro* to rebut said presumption, except the mere denial that the partnership did not receive a benefit. On the other hand, POU's affidavit admits that the monies were used to cancel his personal obligation and that of MI TACITA, a corporation that was owned by him and his wife. We find that to the extent that POU's personal indebtedness and that of MI TACITA's were cancelled from the proceeds of the MONTERREY loan, the conjugal partnership did benefit thereby. A profit is not the only advantage that would render the partnership liable. It would be sufficient if the transaction enabled the partnership to defer liability on an overdue obligation. Accordingly, the presumption instituted by Article 1308 of the Civil Code, has not been rebutted.

Since all the property acquired during the marriage is considered as partnership property, P.R.Laws Ann. tit. 31, §§ 3642, 3647 (1990), the enterprises promoted by POU, i.e., MI TACITA and MONTERREY (BARRANCAS, INC.), were property of or had the purpose of producing financial benefit to the conjugal partnership.[11] Under these circumstances, the conjugal partnership cannot escape liability. *See Núñez v. Pauneto,* 92 J.T.S. 78, p. 9593 at 9597 (holding that if the spouse's conduct purports to benefit the conjugal assets, the responsibility will also be a charge against said assets); *Lugo Montalvo*

*v. González Mañón,* 104 D.P.R. 372, 378 (1975).

MRS. POU's liability is also a settled issue. In a case involving precisely the controversy of whether the wife and the conjugal partnership were liable on a note acquired by the FDIC in circumstances similar to those present in the instant action, the District Court found for the FDIC and refused to exempt the wife and the conjugal partnership from liability. *FDIC v. Pérez Pérez,* 637 F.Supp. 358 (D.P.R.1986). After quoting from *WRC Properties, Inc. v. Santana,* 116 D.P.R. at 27, and having determined that the defendants had failed to show that the conjugal partnership did not benefit from the loan at issue there, the Court (Pieras, J.) ruled that the wife and the conjugal partnership were "jointly and severally liable" for the debt contracted by the husband.

The facts in this action do not warrant a deviation from the ruling in *FDIC v. Pérez Pérez.* Accordingly, both MRS. POU and the conjugal partnership are accountable for the note and Guaranty executed by POU.

### Federal Law

■ As previously discussed, federal law determines the rights and obligations of the parties in this action. *D'Oench,* 315 U.S. at 455–456, 62 S.Ct. at 678.

The issue involved here derives in part from allegations regarding representations or qualifications aimed at defeating the right of the FDIC to collect from the conjugal partnership and MRS. POU certain assets acquired by the FDIC from the receiver of a closed bank. As a matter of federal law, defendants cannot frustrate the FDIC's claim relying on representations or qualifications not recorded in accordance with § 1823(e) at the time that the obligations were contracted.

The suggestion that POU acted solely in his individual capacity when he subscribed the obligations at issue in this action is not supported by the record and comes too tardy. There is nothing in the text of the notes, Guaranty or in the bank records reflecting

---

11. In this case, defendants have not alleged, much less established, that the purpose of the

loans was to prejudice MRS. POU and/or the conjugal partnership.

that POU was not acting as co-administrator of the conjugal partnership nor have defendants pointed at any admissible evidence to establish otherwise. Additionally, neither POU nor his wife notified GTC in writing, prior to the bank's failure, that the note and Guaranty in question did not obligate either of them.

As already mentioned, once the bank closed, defendants are barred from disclaiming liability based on representations or qualifications that do not comply with the requirements of § 1823(e). Defendants' suggestion that in signing the notes and contracting the obligations POU was not representing the conjugal partnership is in effect a "condition" to payment which fails to meet the requirements of 12 U.S.C. § 1823(e) and, therefore, cannot be asserted here as a defense.

Thus, insofar as the recording provision is concerned, the state of the FDIC's knowledge at that time is what is crucial. But ... § 1823(e) is meant to ensure more than just the FDIC's ability to rely on bank records at the time of any examination or acquisition. The statutory requirements that an agreement be approved by the bank's board or loan committee and filed contemporaneously in the bank's records assure prudent consideration of the loan before it is made, and protect against collusive reconstruction of loan terms by bank officials and borrowers (whose interest may well coincide when a bank is about to fail). Knowledge by the FDIC could substitute for the latter protection only if it existed at the very moment the agreement was concluded, and could substitute for the former assurance not at all.

The short of the matter is that Congress opted for the certainty of the requirements set forth in § 1823(e). An agreement that meets them prevails even if the FDIC did not know of it; and an agreement that does not meet them fails even if the FDIC knew. It would be rewriting the statute to hold otherwise.

*Langley* at 95, 108 S.Ct. at 403.

The reasoning in *Langley* is applicable here. The protection against "collusive reconstructions of loan terms by bank officials

and borrowers (whose interest may well coincide when a bank is about to fail)" is no less warranted in this particular case in which the borrower is confronted with pressure brought upon by the failing bank to collect existing indebtedness or write-off the asset. The loan to MONTERREY enabled defendants to defer payment of a pre-existing past due indebtedness by substituting it with a current obligation.

Accordingly, we find that POU's alleged lack of authority to bind the conjugal partnership is in effect a condition upon the repayment of the obligations which adversely affects the FDIC's "interest" in the assets on which claim is made here and, such type of "undisclosed defense" cannot be brought now to avoid or defeat the right of the FDIC to sue upon and reduce to judgment its claim against MRS. POU and the conjugal partnership.

## CONCLUSION

Based on the foregoing, the Motion for Summary Judgment filed by the FDIC (docket No. 44) is hereby **GRANTED.**

The cross motion for summary judgment included by defendants in their response (docket No. 65) is hereby **DENIED.**

The Court finds defendants jointly and severally liable in the principal amount of $170,000.00, plus $17,000.00 as liquidated costs and fees stipulated by the parties.

The FDIC shall submit, **no later than March 24, 1994,** a statement indicating all accrued interest owed up until said date as well as the amount of the daily interest thereafter in order for the Court to enter final judgment.

IT IS SO ORDERED.