**DYNO NOBEL, INC., Plaintiffs,**

v.

**AMOTECH CORPORATION, et al., Defendants.**

**Civil No. 95–2475(SEC).**

United States District Court, D. Puerto Rico.

March 18, 1997.

Francisco A. Besosa, Axtmayer, Adsuar, Munoz & Goyco, San Juan, PR, for Plaintiff.

Edilberto Berrios–Perez, Hato Rey, PR, Edilberto Berrios–Davila, San Juan, PR, for Defendants.

### OPINION AND ORDER

CASELLAS, District Judge.

Pending before the Court is the motion to dismiss filed by defendants Ada Luz Collazo and the conjugal partnership constituted between her and her husband Rey Francisco Rivera Jr. ("the Rivera–Collazo conjugal partnership") Upon careful consideration of the parties' arguments and the applicable law, defendants' motion to dismiss is **DENIED.** **(Docket # 17).**

**Motion to Dismiss/Summary Judgment Standard**

In the present case, defendants have filed a motion to dismiss pursuant to Fed. R.Civ.P. 12(b)(6). Defendants have opposed this motion, and have included several documents to bolster their opposition. **(Docket # 25, 38)** It is clearly established that if a court considers matters outside the pleadings in deciding a motion to dismiss pursuant to Rule 12(b), the court must treat the motion as one for summary judgment. *Cooperativa de Ahorro y Credito Aguada v. Kidder Peabody & Co.*, 993 F.2d 269, 272 (1st Cir.1993), *cert. denied* —— U.S. ——, 115 S.Ct. 1792, 131 L.Ed.2d 720 (1995). In the present case, we will rely on documentation beyond the pleadings to solve the pending dispositive motion and thus we convert defendant's mo-

tion to dismiss into one for summary judgment.

■ As a general rule, when treating a Rule 12 motion as a motion for summary judgment, the Court must apprise all parties of the conversion in order to give them a reasonable opportunity to present all material pertinent to this type of dispositive motion. Fed.R.Civ.P. 12(b) & (c); *Chaparro–Febus v. International Longshoremen Ass'n. Local 1575*, 983 F.2d 325, 331 (1st Cir.1992). Notwithstanding this prescription, there is no need in the present case to mechanically enforce the requirement of express notice. *Id.* A district court is not compelled to give express notice when the opposing party has received movant's motion and materials and has had a reasonable opportunity to respond to them. *Id.* Citing *Moody v. Town of Weymouth*, 805 F.2d 30, 31 (1st Cir.1986). Such is the situation in the present case.

As noted by the First Circuit,

[s]ummary judgment has a special niche in civil litigation. Its role is 'to pierce the boilerplate of the pleadings and assay the parties' proof in order to determine whether trial is actually required.' *Wynne v. Tufts University School of Medicine*, 976 F.2d 791, 794 (1st Cir.1992), *cert. denied*, [507 U.S. 1030] 113 S.Ct. 1845 [123 L.Ed.2d 470] (1993). The device allows courts and litigants to avoid full-blown trials in unwinnable cases, thus conserving the parties' time and money and permitting courts to husband scarce judicial resources. *McCarthy v. Northwest Airlines, Inc.*, 56 F.3d 313, 315 (1st Cir.1995).

According to Fed.R.Civ.P. 56(c), a summary judgment motion should be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). See also *NASCO, Inc. v. Public Storage, Inc.*, 29 F.3d 28 (1st Cir.1994). It is not enough to conjure up an alleged factual dispute between the parties; to defeat summary judgment, there must exist a genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

For a dispute to be "genuine," there must be sufficient evidence to permit a reasonable trier of fact to resolve the issue in favor of the non-moving party. *U.S. v. One Parcel of Real Property*, 960 F.2d 200, 204 (1st Cir. 1992). See also, *Boston Athletic Assn. v. Sullivan*, 867 F.2d 22, 24 (1st Cir.1989). By like token, "material" means that the fact is one that might affect the outcome of the suit under the governing law. *Morris v. Government Development Bank of Puerto Rico*, 27 F.3d 746, 748 (1st Cir.1994).

In determining whether to grant summary judgment, the Court may not, however, weigh the evidence. *Casas Office Machines, Inc. v. Mita Copystar America, Inc.*, 42 F.3d 668 (1st Cir.1994). Summary judgment "admits of no room for credibility determinations, no room for the measured weighing of conflicting evidence such as the trial process entails." *Id.* (citing *Greenburg v. Puerto Rico Maritime Shipping Authority*, 835 F.2d 932, 936 (1st Cir.1987)). Accordingly, if the facts permit more than one reasonable inference, the court on summary judgment may not adopt the inference least favorable to the non-moving party. *Casas Office Machines*, 42 F.3d at 684.

We proceed to elucidate the present controversy by outlining the facts in the light most favorable to the non-moving defendants.

**Factual Background**

On or about December 3, 1991, DYNO and Amotech Corporation ("Amotech") entered into a distribution agreement (the "Agreement") whereby Amotech would promote and sell DYNO products in Puerto Rico, Virgin Islands and other Caribbean Islands. Complaint, ¶ 18; Amotech, Agreement, ¶ 1.A. The Agreement was not exclusive and would only become so for the Puerto Rico area if Amotech obtained 25% of the Puerto Rico market within the first year of the agreement. Agreement, Exhibit 3 of the Complaint, ¶ 1.A. According to plaintiff, the Agreement was never meant to be or become exclusive for the Virgin Islands and other Caribbean Islands. (Docket # 38 Unsworn Declaration of Richard Shea Under Penalty of Perjury,

¶ 10, DYNO's Corporate Counsel, Exhibit 1 (hereinafter "Shea Declaration")).

On or about April 1, 1992, at DYNO's request, Mr. Rey Francisco Rivera Jr. ("Mr.Rivera"), Amotech's President[1] and owner of 30% interest in the company (Complaint,.¶ 15, Deposition of Rey Francisco Rivera Jr., Exhibit 2, p. 16, "Rivera Deposition") executed a guaranty agreement (the "Guaranty") pursuant to which Rivera, individually and in his personal capacity, jointly and severally with Amotech, guaranteed the full and complete payment of "[a]ll sums owing, and to become owing upon any and all sales of goods" sold to Amotech by DYNO; and "[a]ll attorneys' fees, court costs and other costs and expenses incurred by [Amotech] in connection with collection of such Debt ..." (Complaint, ¶ 21; Rivera's Guaranty, Exhibit 5 of the Complaint.)

Upon the execution of the Guaranty and upon Amotech's compliance of several additional terms and conditions, DYNO and Amotech continued doing business in the regular course of their non-exclusive Agreement. Complaint, ¶ 20, Amotech's Answer, ¶ 20.

On December 24, 1993, Rivera and his new (and current) partner, Mr. Lorenzo Aponte Rosa ("Aponte") executed a stock purchase agreement entitled "Acuerdo" ("the Stock Pur. Agmnt") pursuant to which Rivera sold Aponte 49% of Amotech' stock. (Docket # 38, Stock Pur. Agmnt, Exh. 3). The Stock Pur. Agmnt stipulates, in pertinent part: (a) at the time Rivera was the "sole legal owner" of Amotech; (b) pursuant to the Stock Pur.Agmnt, Rivera would keep 51% of the stock and Aponte would acquire 49% of the stock. Stock Pur. Agmnt. ¶¶ 2, 4. Although only Rivera signed the Stock Pur. Agmnt, the stock certificates issued as a result of the execution of the sale were issued to the name of Rivera *and* Collazo. *See e.g.* Stock Certificates No. 2 and 3, dated January 21, 1994, Exhibit 4, Docket # 38.

From September 30, 1994 to September 30, 1995, DYNO sold Amotech goods on credit. Movants' Statement of Uncontested Facts, ¶ 7. DYNO filed the present complaint on December 1, 1995. On March 11, 1996, Amotech and Rivera filed an answer and a counterclaim alleging several violations to Puerto Rico's Dealers Act. Law 75 and other causes of action.

On March 18, 1996, defendants Collazo—who has been married to Rivera for over 23 years and the Rivera–Collazo conjugal partnership filed a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6), claiming that the complaint filed by DYNO fails to state a cause of action against them because the Guaranty signed by Collazo's husband, Rey Francisco Rivera does not make them liable to DYNO for Amotech's debt. We proceed to solve the pending controversy.

### Discussion/Applicable Law

■ Defendants argue in essence that when defendant Rey Francisco Rivera Jr. signed the Guaranty he did not commit his wife and the Rivera–Collazo conjugal partnership because they did not receive any benefits from Amotech's business. The only fact on which they support this allegation is that Ada Collazo, Rivera's wife, did not sign the Guaranty.

Plaintiff argues, and this Court agrees, that the nature of the relationship between Amotech, Rivera, Collazo and the Rivera–Collazo conjugal partnership shows that Rivera had direct control and profited directly from Amotech business deals. Accordingly, Rivera's direct, personal involvement in the running of Amotech, which included the execution of the Guaranty, would have benefitted not only Rivera but also his wife, Collazo, and the Rivera–Collazo conjugal partnership, thus making them liable for Amotech's debt to DYNO, notwithstanding the fact that Collazo did not sign the Guaranty. Indeed, even though Collazo did not sign the Guaranty or the Stock Pur.Agmnt., the Rivera–Collazo legal partnership was, by effect of law, co-owner of the 30% interest of Amotech when it was founded and is current co-owner of the 51% interest in Amotech.

---

**1.** In his taking of deposition Mr. Rivera noted that at the time he subscribed the Guaranty he was serving as Amotech's Vice-president. (Rivera Deposition, Exhibit 2, p. 13) Plaintiff argues, and this Court agrees, that this allegation fails to undermine Amotech's argument against the dismissal of the claim against Collazo and the Rivera–Collazo conjugal partnership.

Defendants argue in their motion to dismiss that at the time of the events leading to this case Rivera was the Vice President and a mere "employee" of Amotech; and that they did not receive any benefits from Rivera's endeavors concerning Amotech and DYNO, in particular from Rivera's execution of the Guaranty. We disagree.

At the time of the execution of the Guaranty, however, Rivera was the President or Vice–President, and 30% shareholder of Amotech. (Docket # 39, Rivera Deposition, Exhibit 2, p. 13. ) Indeed, Amotech and Mr. Rivera admitted that he was Amotech's President at the time of the events in controversy. Complaint, ¶ 15; Amotech/Rivera's Answer, ¶ 15. Moreover, at the time of the events that led to the filing of the Complaint, Rivera's sole or principal source of income was from Amotech. (Docket # 38, Shea Declaration, ¶ 7, Exhibit 1).

Furthermore, Rivera's deposition shows that at all relevant times (at the time of the execution of the Guaranty and when the sales in question took place) Rivera and Collazo were married and there was a legal community between them. Accordingly, the Rivera–Collazo legal partnership is co-owner of Amotech's stock and both Collazo and the legal partnership constituted between her and Rivera have benefitted directly from Amotech's business enterprises. Thus, and in view of the Guaranty subscribed by Rivera, they are also liable for Amotech's outstanding debt to DYNO. (Rivera Deposition, Exhibit 2, p. 11, 13; Stock Pur.Agmnt, Exhibit 3. Stock Certificates No. 2 and 3, dated January 21, 1994, Exhibit 4).

Plaintiff argues that as an officer and a significant shareholder of Amotech, Rivera executed the Guaranty knowing that in doing so he was inducing DYNO to sell products to Amotech, thereby improving or maintaining Amotech's financial standing, and knowing that such action would improve or maintain his financial position and the financial position of Collazo and the Rivera–Collazo legal partnership.

Additionally, in 1994, Rivera wrote to DYNO informing of a "change in partner" in Amotech because Mr. Jose R. Juelle (his former partner and principal investor in Amotech) was no longer with the company and that he (Rivera) was "still in the front [sic] of Amotech Corporation." (Docket # 38, Shea Declaration, ¶ 6) Rivera signed the letter as Amotech's President. Plaintiffs argue that Rivera's statement that he was "still in the front of Amotech" signifies that he was always the person in charge regardless of the percentage of Amotech owned by him. Given the fact that we must consider all reasonable inferences in plaintiff's favor, *Casas Office Machines*, 42 F.3d at 684, we must agree for the time being, with plaintiffs' categorization.

Article 1308 of the Puerto Rico Civil Code outlines the obligations that pertain to the conjugal partnership:

Chargeable to the community property shall be:

(1) **All debts and obligations contracted during the marriage by either of the spouses.**

(2) The arrears or credits deriving during the marriage from obligations encumbering the private property of the spouses as well as the community property. (Emphasis ours) 31 L.P.R.A. § 3661.

■ The Supreme Court of Puerto Rico has construed Article 1308 to mean that any spouse, acting in his or her individual capacity, may perform acts which obligate the conjugal partnership, even without the consent of the other spouse. Such liability may not attach to the non-consenting spouse when the obligation was entered into for the spouse's own benefit or when the obligation incurred had the purpose of injuring or defrauding the spouse. *Banco de Ahorro del Oeste v. Santos*, 112 D.P.R. 70, 74, 77–78 (1982). The Court reiterated this interpretation of Article 1308 was reiterated in *WRC Properties. Inc. v. Santna*, 116 D.P.R. 127 (1985).

■ In order to invoke these exceptions, the non-consenting spouse must make a prima facie showing of such allegation. *WRC Properties, Inc.*, 116 D.P.R. at 135. *Banco de Ahorro del Oeste*, 112 D.P.R. at 78. Once the spouse establishes a prima facie showing, then the burden of proof shifts back to the other spouse. *WRC Properties, Inc.*, 116 D.P.R. at 135. However, a mere denial that

the conjugal partnership benefitted from the husband's dealings is not sufficient to rebut the presumption delineated by Article 1308. *F.D.I.C. v. Monterrey*, 847 F.Supp. 997, 1004 (D.P.R.1994), *aff'd* 45 F.3d 423 (1st Cir.1995).

In the present case, movants fail to argue that the Guaranty executed by Rivera was fraudulently executed or that it was designed to damage the Rivera–Collazo conjugal partnership and/or Collazo. Movants claim in a conclusory manner that they did not benefit from Rivera's dealings. The only support for such claim is that Collazo did not sign the Guaranty. That allegation is insufficient to create a prima facie showing to rebut the presumption that Rivera's execution of the guarantee agreement benefitted Collazo and the Rivera–Collazo conjugal partnership.

Defendants argue that *WRC Properties* "disposes of the issue." A careful scrutiny of such case reveals that it is distinguishable from the present case. In *WRC Properties*, a modeling agency, Jalusan, Inc, entered into a lease agreement with the building's owner, WRC Properties. Defendant Heriberto Santana ("Santana") executed a bond agreement in order to guarantee Jalusan, Inc.'s obligations under the lease agreement. However, in that case Santana was not the president and/or stockholder of Jalusan. Indeed, Santana and his wife filed a third-party claim against Jalusan in the same proceedings. Pursuant to that set of facts, the Court stated that the lease agreement dealt with a corporate entity that was "foreign" to the marital partnership involved.

In this case defendants cannot persuasively argue that Amotech is "foreign" to Collazo and the Rivera–Collazo conjugal partnership, and much less that they had nothing to gain from the Agreement between Amotech and DYNO and the Guaranty executed by Rivera. To the contrary, considering that at the time of events in question Rivera was a principal shareholder of Amotech, Rivera's actions with regard to Amotech "were property or had the purpose of producing financial benefit to the conjugal partnership." *F.D.I.C. v. Monterrey*, 847 F.Supp. at 1005. (Citing *Nunez v. Pauneto*, 92 J.T.S. 78 at 9597, 1992 WL 755587 (P.R.1992)). Therefore, the Guaranty signed by Rivera was made in the family interest, a concept that "should be seen in light of the status and business realities of the spouse and the conjugal partnership ..." *F.D.I.C.v. Alvarez*, 681 F.Supp. 977, 979, n. 3 (D.P.R.1988).

Plaintiff alleges that DYNO would not have continued doing business with Amotech if Rivera, then Amotech's President or Vice-president and significant shareholder had not signed the Guaranty. Plaintiff adds that if that had been the case, Amotech would have been deprived of a business relationship that by defendant's own admission was crucial to the operation and profitability of Amotech, and that would have had definitive negative consequences on the financial stability of Rivera, Collazo and the Rivera–Collazo conjugal partnership.

Defendants seek to distinguish the present case from *F.D.I.C. v. Perez*, 637 F.Supp. 358 (D.P.R.1986), in which the Court found that the wife and conjugal partnership were jointly liable with the husband, arguing that the *Perez* case dealt with a loan and not with a Guaranty. DYNO argues, and this Court agrees, that such difference is negligible considering that by its own express terms, Article 1308 applies to all obligation, not just loans.

The present case may also be distinguished from *F.D.I.C. v. Consolidated Mortgage and Finance Corp.*, 735 F.Supp. 456 (D.P.R.1990). In that case, plaintiff F.D.I.C. sued the defendant corporation and person named Suro, but not Suro's wife and their conjugal partnership. Eventually, the F.D.I.C. obtained a judgment against Suro and tried to execute it against his wife and the conjugal partnership, who were not parties to the action. The Court concluded that plaintiff knew that Suro was married and thus could have sued both his wife and the conjugal partnership, and should have requested his wife' signature at the time that the note was signed. Contrary to the present case, in *Consolidated Mortgage* the F.D.I.C. attempted to execute a judgment against Suro, his wife and the conjugal partnership although the wife and the conjugal partnership had not been made parties to the case.

The Court held in *Consolidated Mortgage* that it was indispensable to sue a debtor's spouse and the conjugal partnership and demonstrate that they benefitted by the debtor's actions for judgment to be executed against them. In the present case, the defendants are parties and have benefitted from Rivera's business enterprises.

In view of the above discussion, we find that defendants Ada Luz Collazo and the conjugal partnership constituted between her and her husband Rey Francisco Rivera Jr. may be held liable pursuant to the Guaranty signed by defendant Rey Francisco Rivera Jr. Accordingly, defendants' motion to dismiss is **DENIED.** (Docket # 17)

**SO ORDERED.**